John DOE, Plaintiff–Appellant,

v.

BLUE CROSS & BLUE SHIELD UNIT-ED OF WISCONSIN and Aurora Health Care, Inc., Defendants–Appellees.

No. 96–3275.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1997.

Decided April 29, 1997.

Thomas W. St. John, Ted A: Warpinski (argued), Friebert, Finerty & St. John, Milwaukee, WI, for Plaintiff-Appellant.

John Edward Hintz, Blue Cross & Blue Shield United of Wisconsin, Milwaukee, WI, for Defendant-Appellee Blue Cross & Blue Shield United of Wisconsin.

James M. Caragher (argued), David W. Simon, Foley & Lardner, Milwaukee, WI, for Defendant-Appellee Aurora Health Care.

Before POSNER, Chief Judge, and FLAUM and EVANS, Circuit Judges.

POSNER, Chief Judge.

The plaintiff was enrolled in an employee welfare benefit plan offered and funded by his employer (Aurora), administered by a health insurer (Blue Cross), and governed by ERISA. In 1989 he underwent psychiatric treatment for which the plan initially paid, but it stopped paying early in 1990 and later that year formally denied coverage. On September 27, 1994, he brought this suit against the employer and the insurer under 29 U.S.C. § 1132(a)(1)(B) to recover benefits allegedly due him under the plan. The district judge granted summary judgment for the defendants on the ground that the suit was brought too late.

■ The plaintiff is proceeding under a fictitious name because of fear that the litigation might result in the disclosure of his psychiatric records. The motion to proceed in this way was not opposed, and the district judge granted it without comment. The judge's action was entirely understandable given the absence of objection and the sensitivity of psychiatric records, but we would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts. See *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463–64 (D.C.Cir.1995) (per curiam), and cases cited there, and our recent dictum in *K.F.P. v. Dane County*, 110 F.3d 516, 518–19 (7th Cir.1997). Rule 10(a) of the Federal Rules of Civil Procedure, in providing that the complaint shall give the names of all the parties to the suit (and our plaintiff's name is *not* "John Doe"), instantiates the principle that judicial proceedings, civil as well as criminal, are to be conducted in public. See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 and n. 17, 100 S.Ct. 2814, 2821 and n. 17, 65 L.Ed.2d 973 (1980); *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 2908 n. 15, 61 L.Ed.2d 608 (1979). Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.

■ There are exceptions. Records or parts of records are sometimes sealed for good reasons, including the protection of state secrets, trade secrets, and informers; and fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses. But the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems. "John Doe" suffers, or at least from 1989 to 1991 suffered, from a psychiatric disorder—obsessive-compulsive syndrome. This is a common enough disorder—some would say that most lawyers and judges suffer from it to a degree—and not such a badge of infamy or humiliation in the modern world that its presence should be an automatic ground for concealing the identity of a party to a federal suit. To make it such would be to propagate the view that mental illness is shameful. Should "John Doe" 's psychiatric records contain material that would be highly embarrassing to the average person yet somehow pertinent to this suit and so an appropriate part of the judicial record, the judge could require that this material be placed under seal.

On August 17, 1990, Blue Cross informed the plaintiff that it would not pay for his psychiatric treatment rendered after December 1, 1989. The suit seeks benefits, in excess of $30,000, for the period between December 1989 and May 31, 1991. The employee benefit plan provides, however, that "no legal action may be commenced ... later than three (3) years from the time written

proof of loss was required to be filed. Written proof of loss must be filed within ninety (90) days of the date of service. This means that any legal action must be commenced within thirty-nine (39) months of the first date of services on which the action is based." The district judge concluded that the last day on which the plaintiff could sue for the full benefits that he was seeking to recover was March 1993, 39 months after the first date (sometime in December 1989) on which the services for which he is seeking benefits were rendered, and that the last day on which he could sue for anything was August 29, 1994, 39 months after the final date (May 31, 1991) on which services for which he is seeking benefits were rendered.

■ The plan also contains a provision, however, that no suit may be brought until the "completion of the ERISA claim appeal process," which is to say until the exhaustion of the plaintiff's internal remedies. Even without this provision, the plaintiff, as a matter of the federal common law of ERISA, would be required to exhaust his ERISA–required internal remedies, 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(g), before being allowed to sue. *Wilczynski v. Lumbermens Mutual Casualty Co.*, 93 F.3d 397, 401–02 (7th Cir.1996); *Powell v. A.T. & .T Communications, Inc.*, 938 F.2d 823, 825–26 (7th Cir.1991); *Communications Workers of America v. American Tel. & Tel. Co.*, 40 F.3d 426, 431–32 (D.C.Cir.1994); *Makar v. Health Care Corp.*, 872 F.2d 80, 82–83 (4th Cir.1989); John H. Langbein & Bruce A. Wolk, *Pension and Employee Benefit Law* 732–34 (2d ed.1995). So if the internal appeals process took more than 39 months, the plaintiff would be barred from suing even though the plan forbade him to sue earlier. Less dramatically, if the internal appeals process is at all protracted, the plaintiff's time for suing may be substantially compressed. The process was protracted in this case, not winding up until September 25, 1991. But that still left 17 months within which the plaintiff could sue yet his entire claim still be within the 39–month limitation.

The plaintiff points out correctly that ERISA does not contain a statute of limitations for suits to recover benefits and that the practice of the federal courts when a federal statute contains no limitations period is to borrow the limitations period in the most nearly analogous state or federal statute of limitations. He says that the most analogous statute of limitations is Wisconsin's statute of limitations for suits on a written contract, since all the parties are citizens of Wisconsin, the services for which the plaintiff is claiming benefits were almost certainly rendered there (although the record is silent on the point), the suit was brought there, and the employee benefit plan both is a contract and is written. That statute of limitations is six years, Wis. Stat. § 893.43, and the plaintiff claims that because the plan is in the form of an insurance policy, Wisconsin law forbids the six years' being shortened in the contract, Wis. Stat. § 631.83(3)(a), and that this prohibition must be borrowed for use in this ERISA suit along with the limitations period itself.

■ We may assume without having to decide both that the six-year statute of limitations is the right one to borrow and that under Wisconsin law it cannot be shortened by the agreement of the parties. The latter assumption is particularly dubious, because Aurora's employee benefit plan was self-funded; Blue Cross, though an insurer, was acting merely as the plan administrator. No matter; the prohibition against shortening is not binding in an ERISA suit, so the Wisconsin statute of limitations falls out of the case.

■ The question what limitations *principles* shall govern the borrowed limitations *period* is in the first instance one of federal law, to be decided in accordance with the policies discernible in or imputable to the federal statute for which the state limitations period has been borrowed. *West v. Conrail*, 481 U.S. 35, 39–40, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987); *Hemmings v. Barian*, 822 F.2d 688, 690 (7th Cir.1987); *McIntosh v. Antonino*, 71 F.3d 29, 36 (1st Cir.1995). It is true that in the case of tolling principles (principles that allow a plaintiff to sue after the statutory period has expired), the principles and the period must ordinarily be borrowed from the same law. *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000–01, 104 L.Ed.2d 582 (1989). But the

reason is that the length of the limitations period and the liberality of the tolling provisions are interdependent: liberal provisions offset a short period, and illiberal ones offset a long one. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975); *Lewellen v. Morley,* 875 F.2d 118, 120–21 (7th Cir.1989); *Hemmings v. Barian, supra,* 822 F.2d at 691. Although it could be argued that the longer the limitations period, the more sense it makes to allow the parties to shorten it by contract, this is a weaker interdependence. So the cases that we have cited do not require us to borrow Wisconsin's rule against shortening.

■■■ Besides the tolling exception, there are cases in which the federal statute for which the period is being borrowed is agnostic about the limitations principles, so the court borrows the principles and the period from the same state law. *Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1205 (7th Cir.1992), appears to have been such a case. Such cases are not a real exception to the rule we've been expounding. They just illustrate the common situation in which the correct federal common law rule to adopt in order to decide the particular case is the local state's rule. The decision to adopt it cannot be made without consideration of the policies behind the federal statute. State law doesn't apply of its own force to a suit based on federal law—especially a suit under ERISA, with its comprehensive preemption provision. (True, there is an exception to ERISA preemption for insurance, 29 U.S.C. § 1144(b)(2)(A), but it is inapplicable here, since, as we mentioned, Blue Cross, though an insurer, was merely administering a self-funded plan, which is not an insurance policy for purposes of the exception. See 29 U.S.C. § 1144(b)(2)(B); *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987); *Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 657 (7th Cir.1992).) To commit ourselves to every incidental feature of the borrowed statute of limitations without con-

sidering whether the policies of ERISA would be advanced or retarded by contractual limitations periods would be to grope in the dark—as well as to risk creating a national crazy quilt of ERISA limitations law, with contractual limitations enforceable in some states but not in others, contrary to the uniformitarian policy of the statute. *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.,* 39 F.3d 784, 789 (7th Cir.1994); *Hammond v. Fidelity & Guaranty Life Ins. Co.,* 965 F.2d 428, 429–30 (7th Cir.1992).

■■■ The dominant view in contract law is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable. This is true both in general, *United Commercial Travelers v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 1365–66, 91 L.Ed. 1687 (1947); *Union Automobile Indemnity Ass'n v. Shields,* 79 F.3d 39, 41 (7th Cir.1996); *Taylor v. Western & Southern Life Ins. Co., supra,* 966 F.2d at 1203–05, and with specific reference to insurance contracts. 1 Calvin W. Corman, *Limitation of Actions* § 3.2.3, p. 179 (1991). If the contractually compressed period is unreasonably short, this creates a suspicion that the plaintiff was gulled or coerced by the defendant when the contract was made.

■■■ We think that the dominant view is right because it is consistent with the principle of party autonomy that underlies the law of contracts, and that it should be applicable to ERISA plans. Statutes of limitations are not drafted with employee benefit plans in mind—that is why the plaintiff has had to cast as far afield as the state's general contract statute of limitations for a candidate for borrowing—and there is no presumption that they fit the special needs of those plans as well as would a contractual limitation tailored to the particular plan. It is true that these plans are not negotiated with the individual employees. But employee benefits are an important part of the employee's total compensation package, and the creation of unreasonable barriers to obtaining the benefits may therefore hurt the employer by causing an employee backlash. *Gallo v. Amoco Corp.,* 102 F.3d 918, 921 (7th Cir.1996). The

requirement that the contractual limitation, to be enforceable, be reasonable backs up the market incentives to deal fairly with the plan's beneficiaries. We conclude that such limitations if reasonable are enforceable in suits under ERISA, regardless of state law. This conclusion accords with the only case that we have been able to find on the question. *Chilcote v. Blue Cross & Blue Shield United,* 841 F.Supp. 877 (E.D.Wis.1993).

There is no doubt that the contractual limitation here—39 months from the date of the services for which benefits are sought—is reasonable in general and in this case, where even though the internal appeals process was protracted, the employee, represented throughout by counsel, had almost a year and a half in which to bring his suit before the limitations period expired. A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more than 30 or 60 days is allowed within which to file such a suit. See, e.g., 33 U.S.C. § 921(a); 42 U.S.C. § 7607(b)(1). Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. It is like an appeal, which in the federal courts must be filed within 10, 30, or 60 days of the judgment appealed from, Fed. R.App. P. 4, depending on the nature of the litigation, rather than like an original lawsuit.

The plaintiff argues that the period within which he had to bring the suit was not really 17 months, because after the internal appeals process was completed the parties continued discussing the possibility of a peaceful settlement until May 1994, by which time the 39–month limitations period had already expired for the first 14 months of benefits sought. But discussing settlement after striking out at the final stage of the appeals process no more extends the deadline for suit than discussing settlement after the final judgment in the district court extends the time for taking an appeal. The internal appeals process was over in September 1991. The plaintiff's lawyer knew this,

threatened suit, then joined the defendants' lawyers in seeking a settlement. If the plaintiff's lawyer wanted a suspension of the limitations period during settlement negotiations he had only to ask the defendants to make a tolling agreement with him. Otherwise the time in which to sue would and did keep running. *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1071 (7th Cir.1978); *Brighton Village Associates v. United States,* 52 F.3d 1056, 1061 (Fed.Cir.1995); *Raziano v. United States,* 999 F.2d 1539, 1541 (11th Cir.1993). The plaintiff could of course have filed the suit yet continued negotiating a settlement. Most suits are settled.

The most difficult issue in this case is whether the limitations period, which otherwise would have expired before "Doe" sued, was tolled by the defendants' action— by which we do not mean their discussing settlement; we have just said that the running of a limitations period is not suspended by settlement negotiations. The defendants do not deny that the doctrine of equitable estoppel is applicable to the defense, in an ERISA suit for benefits, that a statutory or contractual limitations period has expired, and we think it does apply—though we cannot find any cases on the precise question. The doctrine is presumptively applicable in federal suits, *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990), and we do not find anything to rebut the presumption in the case of suits for ERISA benefits. It is true that the applicability of the doctrine to suits under ERISA for breach of fiduciary duty, as distinct from suits for benefits, has been left open. *Wolin v. Smith Barney Inc.,* 83 F.3d 847, 855 (7th Cir.1996); cf. *Central States, Southeast & Southwest Areas Pension Fund v. Navco,* 3 F.3d 167, 173–74 (7th Cir.1993). But that is because ERISA specifies a limitations period for such suits *and* further provides that fraudulent concealment, a doctrine that overlaps with equitable estoppel, tolls the period. 29 U.S.C. § 1113. It is also true that the applicability of estoppel principles in ERISA cases is controversial because ERISA forbids the conferral of benefits other than in accordance with the written ERISA plan. 29 U.S.C. § 1102(a)(1); *Miller v. Taylor Insula-*

*tion Co.,* 39 F.3d 755, 759 (7th Cir.1994); *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 58–59 (4th Cir.1992). But this reasoning reaches no further than to forbid *oral* modifications, whether in the name of equitable estoppel or any other legal doctrine, of those provisions of an ERISA plan that specify the beneficiaries' entitlements. *Miller v. Taylor Insulation Co., supra,* 39 F.3d at 759; *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645 (7th Cir.1993); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 457–58 (11th Cir.1996). It does not follow that written modifications are forbidden (but see *Coleman v. Nationwide Life Ins. Co., supra,* 969 F.2d at 59)—and in this case, as we shall see, the claim of estoppel is based on a letter—or that the no-modification principle, even if it extends to some or all written modifications, should be applicable to the purely procedural provisions of a plan. Cf. *Jones v. UOP,* 16 F.3d 141, 144–45 (7th Cir.1994). We think in fact that *written* modifications of *such* provisions, at least, are not barred. Such modifications are remote from the concerns that lie behind the statutory requirement that benefits not be paid otherwise than in accordance with the written plan (if there is one—there needn't be, *Miller v. Taylor Insulation Co., supra,* 39 F.3d at 760; *Deibler v. United Food & Commercial Workers' Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503–04 (9th Cir.1985)).

Under the doctrine of equitable estoppel (or waiver, a close substitute when it has tokens of reliability equivalent to those of equitable estoppel, *Thomason v. Aetna Life Ins. Co., supra,* 9 F.3d at 647–49; *Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1347–48 (11th Cir.1994)), if the defendant through representations or otherwise prevents the plaintiff from suing within the limitations period, the plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit. *Cada v. Baxter Healthcare Corp., supra,* 920 F.2d at 452; *Wolin v. Smith Barney Inc., supra,* 83 F.3d at 852–53. It is possible to argue—indeed it is the majority position, see, e.g., *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1494–95 (2d Cir.1995); *Keefe v. Bahama Cruise Line,*

*Inc.,* 867 F.2d 1318, 1324–25 (11th Cir.1989) (per curiam); *Kazanzas v. Walt Disney World Co.,* 704 F.2d 1527, 1531 n. 4 (11th Cir.1983); *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 263, 377 N.E.2d 713, 717 (1978); 2 Corman, *supra,* § 9.1, p. 35, that the plaintiff should be allowed only a "reasonable" amount of time within which to sue after the defendant's delaying tactics have ended. Although the question is a very close one, it seems to us that determining what is "reasonable" in this context injects unnecessary uncertainty into the judicial inquiry; and we have trouble seeing why a defendant whose own activities made the plaintiff miss the deadline should be allowed to litigate over whether the plaintiff could have sued earlier. See *Ott v. Midland–Ross Corp.,* 600 F.2d 24, 33–34 (6th Cir.1979).

The most common example of equitable estoppel is where the defendant asks the plaintiff to delay the filing of his suit pending negotiations aimed at resolving the parties' dispute out of court. The plaintiff claims that this is such a case. The district judge rejected the claim without an elaboration of his reasons. We think the claim had merit. As we said, the parties kept negotiating after the internal appeals process terminated adversely to the plaintiff. All this while the agreed-upon time for suing was running, as we have seen, since there was no tolling agreement. But then something happened. In response to a letter by the plaintiff's lawyer to Blue Cross's lawyer, Elizabeth Bartlett, dated October 27, 1993, inviting further settlement negotiations under threat of an immediate suit, another lawyer for Blue Cross wrote the plaintiff's lawyer two days later, confirming a telephone conversation the two had just had. This lawyer wrote that Bartlett was on medical leave and reminded his correspondent that in their telephone conversation "you kindly agreed to wait for a response to your letter of October 27, 1993, and to delay filing suit on behalf of [the plaintiff] until the end of November, when Ms. Bartlett will be available to consider this matter." There was no explicit promise to toll the contractual limitations period, but it was implicit in the letter (and the acquiescence of the plain-

tiff's lawyer in the request to delay suing), since it would be absurd to ask that the plaintiff kindly delay filing suit until it was too late for him to do so. The letter had to mean, moreover, not just that Blue Cross was agreeing to toll the contractual limitations period until the end of November, but that it was agreeing to toll the period until Bartlett considered the matter and informed the plaintiff's lawyer of the results of her consideration. It would have been contrary to the spirit of the implicit agreement between the two lawyers forged by the telephone conversation and confirmatory letter for the plaintiff's lawyer to have fired off a lawsuit on the last day of November without waiting to hear what Bartlett had to say to his latest suggestion for a settlement.

Bartlett did not respond until December. When she did so, she proposed two alternative methods of resolving the dispute without litigation. A further correspondence ensued. The parties discussed at length the possibility of submitting the dispute to a panel of medical professionals for resolution—a kind of arbitration. The plaintiff's lawyer rejected the defendants' candidates for the panel. On May 25, 1994, the defendants rejected the plaintiff's suggested candidates but made a counterproposal which the plaintiff's lawyer rejected in a letter dated July 20, 1994. Although it could be argued that after years of negotiation it should not have taken him two months to reject the defendants' counterproposal, this strikes us as a quibble. The defendants having indicated a strong desire to avoid being sued, the plaintiff and his lawyer had to consider carefully whether to sue at long last for what was after all a small sum of money by modern standards of federal litigation or to continue with the settlement process.

We conclude that the contractual limitations period was tolled for the entire period between October 29, 1993, and July 20, 1994. This does not help the plaintiff with respect to claims that expired before October 29, 1993, because the services giving rise to those claims had been rendered more than 39 months earlier; or with respect to claims that expired after July 20, 1994, but before the suit was finally brought even minus the tolling period. Still, some of the plaintiff's claims—apparently, seven months' worth—did not expire before suit was filed, once the tolling period is subtracted (the rule in this circuit, remember). So the suit should not have been dismissed in its entirety.

We point out, in further support of our conclusion, that the doctrine of equitable estoppel should be applied more liberally to a contractual limitations period, as here, than to a statutory limitations period. Statutes of limitations serve important interests besides the purely private, and so presumptively waivable, interests of the litigants affected by them. *Sun Oil Co. v. Wortman,* 486 U.S. 717, 730, 108 S.Ct. 2117, 2126, 100 L.Ed.2d 743 (1988); *Johnson v. Railway Express Agency, Inc., supra,* 421 U.S. at 463–64, 95 S.Ct. at 1721–22; *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1394 (7th Cir.1990) (concurring opinion). In particular, they protect the courts and the public against the expense and errors of adjudicating stale claims. But where parties by contract shorten the period of limitations that the government had deemed the appropriate outer bounds for suit, and then one of the parties does something that makes it inequitable to hold the other party to the shortened period, there is no social interest in preventing the period from being enlarged, especially when the enlarged period still falls far short of the statutory period, which is true here if Wisconsin's six-year statute of limitations would have applied in the absence of the agreement to shorten the period. We are not even sure that it is necessary to get into considerations of what is equitable. In effect, the defendants offered the plaintiff a tolling agreement of indefinite duration but expiring when settlement negotiations finally broke down, and the plaintiff accepted, thereby binding the defendants. It was a contract embedded within the larger contract constituted by the benefits plan. In such a case the application of the doctrine of equitable estoppel is nothing exotic; it amounts to nothing more than the application of basic contract principles. And, as we said earlier, the policy against oral modification of ERISA plans is not in play.

The judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.