UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 97-1963

FRANKLIN RALPH,

Plaintiff - Appellee,

v.

LUCENT TECHNOLOGIES, INC.,

Defendant - Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy J. Gertner, U.S. District Judge] 



Before

Bownes and Cyr, Senior Circuit Judges, 

and Skinner,* Senior District Judge. 



Thomas E. Shirley, with whom Elizabeth M. McCarron and 
Choate, Hall & Stewart were on brief for appellant. 
Marjory D. Robertson, with whom Curley & Curley, P.C. was on 
brief for appellee.



February 2, 1998


 

* Of the District of Massachusetts, sitting by designation.

SKINNER, Senior District Judge. The plaintiff SKINNER, Senior District Judge. 

originally brought this action against his former employer,

Lucent Technologies, Inc. (Lucent), in the Superior Court for

Essex County, Massachusetts, in aid of a pending claim before the

Massachusetts Commission Against Discrimination (MCAD). The

relief sought by the terms of the complaint was a temporary

injunction (1) permitting him to return to work with a

"reasonable accommodation" for his disability and (2) requiring

Lucent to toll the 90-day deadline for applying for various

benefits. The plaintiff relies on Massachusetts General Laws,

ch. 151B, 9 and the Americans With Disabilities Act, 42 U.S.C.

12111 et seq. The defendant removed the case to the United 

States District Court, alleging a federal question and diversity

of citizenship. The plaintiff is a resident of New Hampshire and

Lucent is a Delaware corporation having a regular place of

business in Massachusetts.

The district court made findings of likelihood of

success on the merits, irreparable harm and absence of hardship

to the defendant. It entered a preliminary injunction requiring

Lucent to allow the plaintiff to return to part-time work for a

"provisional" period of four weeks and tolling the period for

applying for various benefits for the same period. So much of

the order as required Lucent to allow the plaintiff to work part-

time was stayed pending appeal. This appeal followed.

-2-

The district court had original federal question

jurisdiction of this action, and this court has appellate

jurisdiction. 28 U.S.C. 1331, 1441 and 1292(a)(1).

STANDARDS OF REVIEW STANDARDS OF REVIEW

We have extensively addressed the criteria for the

issuance of a preliminary injunction and the scope of appellate

review in a long series of cases, e.g.:

In the typical case, a party seeking
preliminary injunctive relief must prove:
(1) a substantial likelihood of success on
the merits; (2) a significant risk of
irreparable harm if the injunction is
withheld; (3) a favorable balance of
hardships; (4) a fit (or at least, a lack of
friction) between the injunction and the
public interest. . . . We review the district
court's grant of a preliminary injunction for
a mistake of law or abuse of discretion.

Equal Employment Opportunity Comm'n v. Astra USA, Inc., 94 F.3d 

738, 743 (1st Cir. 1996) (citations omitted).

In its brief, Lucent identifies the plaintiff's

likelihood of success and his risk of irreparable injury as the

two issues presented for review. The other two criteria, balance

of hardship and the public interest, therefore, are not issues in

this appeal.

BACKGROUND BACKGROUND

The following summary of the evidence is taken from the

verified complaint, the verified complaint before the MCAD and

various affidavits submitted to the district court. While the

underlying claim is not at issue in this appeal, we consider

these allegations as relevant background to our resolution of

-3-

this appeal. We take the evidence in the light most favorable to

the plaintiff-appellee.

The plaintiff was employed by Lucent and its

predecessor entities for twenty-four years. He was a "Composite

Master Tradesworker," i.e., an expert carpenter, assigned to

Lucent's Merrimack Valley facility in North Andover,

Massachusetts, and he was represented by a local of the

Communications Workers of America union under a collective

bargaining agreement. He was eligible for 52 weeks of disability

leave at full pay under his employer's "Sickness and Accident

Disability Benefit Plan." 

In April of 1996, plaintiff had a mental breakdown and

went on paid disability leave. He had been able to attend work

only briefly in June and July of 1997. Plaintiff attributes his

disability to sexual harassment by other Lucent employees.

According to a complaint he filed with the MCAD in

September of 1996, the plaintiff had been subjected to sexual

harassment by his male co-workers and his male supervisor for

five to six years. He identified six harassers by name. The co-

workers made the plaintiff the butt of crude and derisive jokes

about being a homosexual and a child molester. The plaintiff is

neither a homosexual nor a child molester. The harassment

included offensive touching by his supervisor and others.

At one point, the name "Tookie" was inscribed on the

plaintiff's locker. This graffiti was a reference to Tookie

Amirault, a man convicted of child molestation in a highly

-4-

publicized case. The plaintiff's co-workers called him by this

name. The plaintiff's supervisor did not act on the plaintiff's

requests for redress, and even participated in the harassment.

According to the MCAD complaint, the last instance of harassment

occurred on April 9, 1996. The plaintiff discovered that someone

had placed on his truck a picture of a man in his underwear. He

brought the photo to his supervisor, said that he could not take

it anymore, and went home. Thereafter, the plaintiff made

attempts on his own life and was hospitalized several times.

In July of 1996, the plaintiff consulted Dr. Jack

Danielian, a psychologist. He was diagnosed with major

depression and post-traumatic stress disorder. In late October

or November of 1996, he consulted with Rowen Hochstedler, a

psychiatrist at a Newburyport hospital. Dr. Hochstedler

prescribed medication, but discontinued it in early 1997, because

the plaintiff functioned well without it, and it was likely to do

more harm than good.

Lucent notified the plaintiff in March of 1997 that his

disability benefits would expire on May 27, 1997. He sought and

obtained from Dr. Danielian and Dr. Hochstedler medical clearance

to return to work in April. Dr. Morin, a psychiatrist hired by

Lucent, recommended that he be kept away from his alleged

harassers upon his return.

Dr. Waugh, a general practice physician who serves as

Medical Director at Lucent's Merrimack Valley facility finally

authorized the plaintiff's return to work on May 23, 1997.

-5-

Consistent with the plaintiff's wishes and Dr. Morin's

recommendation, he was assigned to a new work site with a new

supervisor named Robert Bartley.

The plaintiff was to work five days a week, 6:30 a. m.

to 3:00 p. m. His first day, May 23, was the Friday before

Memorial Day weekend. He completed the day without incident. A

human resources officer for Lucent named Sheila Landers met with

the plaintiff that day and ordered him to stay away from his

former co-workers.

The next workday was Tuesday, May 27. Ms. Landers met

with the plaintiff's former co-workers and told them to stay away

from him. No disciplinary action was imposed for their conduct.

That morning, the plaintiff returned to his former locker at his

old work site and found the words "Tooky's Toys" (or "Tookie's

Toys") inscribed in the locker. According to his affidavit, this

inscription was probably present before his disability leave, but

it was different from the inscription "Tookie" on the outside of

his locker which was referred to in his MCAD complaint and which

he says he had removed himself.

The plaintiff was upset by the inscription to such a

degree that he could not continue with work. He reported to

Lucent's medical department, saw Dr. Waugh, and was sent home at

8:10 a. m.

The plaintiff returned to work the next day, Wednesday,

May 28. He met with Dr. Waugh and they agreed to meet weekly to

monitor his progress. The plaintiff worked the remainder of the

-6-

week. He used some of his paid personal time to leave two hours

early on Friday, May 30. He worked a full day on the following

Monday, June 2.

On the morning of Tuesday, June 3, the plaintiff became

emotionally distraught and went home with the consent of his

supervisor at about 8:30 a. m. Without giving any names, the

plaintiff ascribed his distress to people giving him dirty looks.

By a subsequent affidavit he explained that the wife of one of

the men he accused of harassment had given him hostile looks and

two male employees appeared to be smirking at him and laughing.

As he departed, the plaintiff had some conversation

with his supervisor in which the possibility of a temporary part-

time schedule was discussed. Bartley suggested he use vacation

time to fill in a part-time schedule until he got used to being

back at work.

The plaintiff remained home the following day,

Wednesday, June 4. He expressed a desire to return to work.

Dr. Danielian, the psychologist treating the plaintiff,

spoke to Dr. Waugh on the telephone. They agreed that the

plaintiff should see Dr. Hochstedler. Later that day, Bartley

spoke to Dr. Waugh and an employee of Lucent's benefits

department named Lina McLaughlin. Dr. Waugh said he would need

input from the plaintiff's treating physicians in order to

authorize the plaintiff's return to work.

Mr. Bartley and Lina McLaughlin then telephoned the

plaintiff and told him he would need Dr. Waugh's clearance to

-7-

return to work, else he would be removed from the payroll because

he had run out of disability benefits.

On Thursday, June 5, the plaintiff reported for work.

Dr. Waugh refused to authorize his return. Mr. Bartley and

Ms. McLaughlin then met with him and told him he had three

options:

(i) apply for a disability pension pursuant
to the pension plan;

(ii) apply for disability payments under the
long-term disability plan; or

(iii) take an additional unpaid disability
leave for up to six months to allow for the
possibility of a recovery permitting a return
to work.

Later that day, the plaintiff's counsel called

Dr. Danielian and informed him of the ultimatum put to the

plaintiff. Dr. Danielian called Dr. Waugh. Dr. Danielian

reports by affidavit that Dr. Waugh disclaimed responsibility for

the decision to turn the plaintiff away. On Monday, June 9,

plaintiff's counsel made a demand to Lucent that the plaintiff be

afforded the accommodation of a temporary return to work part-

time.

At this point the record reveals a series of letters

and affidavits from the plaintiff's treating therapists, Dr.

Danielian (psychologist) and Dr. Hochstedler (psychiatrist), the

gist of which may be summarized as follows:

1. The plaintiff is fit to go to work, part-time at

the outset, with the likelihood of full-time work as he adjusts

-8-

to the return to the workplace. A trial period of part-time work

would be a reasonable accommodation to his disability.

2. The plaintiff is likely to function better without

medication.

3. Facing up to the reality of returning to Lucent is

a critical factor in curing the plaintiff's depression, although

it is likely that his progress would be uneven.

4. Delay in return to work will tend to exacerbate his

condition.1

A psychiatrist, hired by Lucent, and Lucent's medical

director ultimately expressed contrary views, and the plaintiff

was not permitted to return to part-time work.

The plaintiff's therapists were qualified in their

respective fields, and the district judge, as finder of fact, was

entitled to accept their opinions, which she did.

DISCUSSION DISCUSSION

A. Likelihood of Success on the Merits 

"The likelihood of success on the merits is a predicate

to the issuance of a preliminary injunction." American Auto. 

Mfrs. Ass'n v. Commissoner, Mass. Dep't of Envtl. Protection, 31 

F.3d 18, 28 (1st Cir. 1994). The merits to be considered are the

merits of Ralph's underlying ADA and state-law disability-

 

1 The defendant's contention at oral argument that the
therapists meant work anywhere is contradicted by this record.
In any case, it would hardly be considered therapeutic to send
the plaintiff on a search for another job after 24 years at
Lucent. Employment discrimination is not appropriately corrected
by removing the victim.

-9-

discrimination claims, which turn primarily on whether Lucent has

afforded Ralph's disability all "reasonable accommodation;" and

whether Ralph is entitled to injunctive relief to preserve the

status quo pending the resolution of his original MCAD

complaint.2 A preliminary injunction to prevent irreparable

injury during the pendency of a complaint before the MCAD is

authorized by Mass. Gen. Laws ch. 151B, 9. Accommodation of a

disability by providing for part-time work is authorized by the

Americans With Disabilities Act, 42 U.S.C. 12111(9)(B), and by

the E.E.O.C. guideline, Enforcement Guidance: The Americans With 

Disabilities and Psychiatric Disabilities, 23 (1997) cited by the 

district judge. See Morgan v. Massachusetts Gen. Hosp., 901 F.2d 

186, 192 (1st Cir. 1990). The district court was warranted in

finding a likelihood of success on the merits of this limited

complaint.

B. Likelihood of Irreparable Harm 

"Though mistake of law is a rubric that
requires no elaboration, abuse of discretion
is a fuzzier concept. That inquiry is case-
specific, see Weaver [v. Henderson], 984 F.2d 
[11] at 13 [(1st. Cir. 1993)]; Narragansett 
Indian Tribe [v. Gilbert], 934 F.2d [4] at 5- 
6 [(1st. Cir. 1991)], and a finding of abuse
usually entails proof that the nisi prius
court, in making the challenged ruling,
ignored pertinent elements deserving
 

2 Success on the merits of the underlying claim for same-sex
sexual harassment may be likely as well. Morgan v. Massachusetts 
Gen. Hosp., 901 F.2d 186 (1st Cir. 1990); Doe by Doe v. City of 
Bellville, Ill., 119 F.3d 563, 570 (7th Cir. 1997). The contrary 
conclusion by the Fifth Circuit is presently before the Supreme
Court. Oncale v. Sundowner Offshore Servs., Inc., 83 F.3d 118 
(5th Cir. 1996). The matter is not before us, however, and we
venture no opinion.

-10-

significant weight, considered improper
criteria, or, though assessing all
appropriate and no inappropriate factors,
plainly erred in balancing them. See
[Independent Oil and Chem. Workers of Quincy, 
Inc. v.] Proctor & Gamble Mfg. Co., 864 F.2d 
[921] at 929 [(1st Cir. 1988)]."

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 

(1st Cir. 1996).

A federal court must find a cognizable threat of

irreparable harm as an essential prerequisite to the issuance of

a preliminary injunction. Id. 102 F.3d at 19. 

The district judge made the following finding:

"I also find that Ralph has demonstrated
irreparable harm. Though losses occasioned
by employment disputes often do not rise to
the level of irreparable harm, Ralph's case
is different for two reasons. First, the
harassment Ralph suffered at Lucent played a
significant role in his breakdown. Medical
evidence suggests that returning to work is
essential to his recovery. Second, Ralph's
disability will worsen the longer he is out
of work. These circumstances distinguish
Ralph's case from the standard discrimination
lawsuit."

We agree.

C. Preemption 

The defendant's first preemption argument is that the

plaintiff's claim is preempted by the collective bargaining

agreement between the plaintiff's union and Lucent which, among

other things, provides a grievance and arbitration procedure.

Labor Management Act, 301, 29 U.S.C. 185. This argument

fails, however, because the present controversy concerns the

plaintiff's rights under state and federal statutes which exist

-11-

independently of the collective bargaining agreement and do not

require interpretation of that agreement. Livadas v. Bradshaw, 

512 U.S. 107, 123-124 (1994); Hawaiian Airlines v. Norris, 512 

U.S. 246, 261 (1994).

The cases cited by the defendant are inapposite. In

Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40 (1st Cir. 1997), 

provisos in the State Workers' Compensation statute itself gave

precedence to conflicting provisions of a collective bargaining

agreement. We note:

"It is doubtful whether without the last
quoted proviso, [defendant] would have any
plausible claim of federal preemption.
Massachusetts has an independent interest in
regulating injury compensation and apart from
the proviso the elements of both [of the
plaintiff's] state-law claims appear to be
independent of bargaining agreement
provisions." 

Id. at 41. 

In Reese v. Houston Lighting & Power Co., 79 F.3d 485, 

487 (5th Cir. 1996), the court upheld a finding of preemption

because the litigated issues were specifically covered in the

collective bargaining agreement, e. g., promotion, seniority, and

assignment to training programs.

The rights alleged here are independent, nonnegotiable

rights founded not only in a state statute, but in a federal

statute, the Americans With Disabilities Act. We hold that these

rights are not to be preempted by the collective bargaining

agreement.

-12-

Secondly, the defendant asserts preemption by the

Employment Retirement Income Security Act (ERISA), 29 U.S.C.

1144(A). In Boston Children's Heart Found., Inc. v. Nadal- 

Ginard, 73 F.3d 429, 439-40 (1st Cir. 1996), we stated: 

State laws that have merely a "tenuous,
remote, or peripheral connection with a
covered benefit plan" may not be preempted by
ERISA. . . . . Such is normally the case
with respect to laws of general
applicability. . . . A court cannot conclude
that a state law is one of general
applicability, and as such is not preempted
by ERISA, based on the form or label of the
law, however. Absent precedent on a closely
related problem, the inquiry into whether a
state law "relates to" an ERISA plan or is
merely "tenuous, remote, or peripheral"
requires a court to look at the facts of [a]
particular case.

See also Rozzell v. Security Servs., Inc., 38 F.3d 819 (5th Cir. 

1994); Angone v. 990 Lake Shore Drive Home Owners Ass'n, 866 

F. Supp. 377, 380 (N.D. Ill. 1994). In this case, the only

impact on Lucent's ERISA plan is the extension of time to make

application for certain benefits. No variation in the terms of

benefits or their application is implicated. The Seventh Circuit

has held that the time limits under an ERISA plan are subject to

equitable tolling. Doe v. Blue Cross & Blue Shield United of 

Wis., 112 F.3d 869, 875-878 (7th Cir. 1997), and the extension of 

time in this case "does not raise the core concern underlying

ERISA preemption." Nadal-Ginard, 73 F.3d at 440. 

Moreover, there is no authority for the proposition

that ERISA preempts rights under a federal statute. In this 

case, the very minor impingement on the defendant's ERISA plan is

-13-

in aid of a reasonable accommodation under the Americans With

Disabilities Act.

We hold that there is no preemption by ERISA.

-14-

D. Reasonable Accommodation 

The defendant argues that it has already made a

reasonable accommodation to the plaintiff's disability by giving

him 52 weeks of leave with pay, plus changing his work assignment

and supervisor. The duty to provide reasonable accommodation is

a continuing one, however, and not exhausted by one effort.

Bultemeyer v. Fort Wayne Community Sch., 100 F.3d 1281, 1285 (7th 

Cir. 1996).

The very limited four-week accommodation ordered by the

district court strikes us as eminently reasonable; so reasonable,

in fact, that we are puzzled that Lucent has drawn a line in the

sand at this point. In colloquy with counsel, the district judge

made it clear that if the plaintiff failed this four-week test,

that was the end of the matter.

We hold that the accommodation ordered by the court was

reasonable and in accord with the Americans With Disabilities

Act.

CONCLUSION CONCLUSION

We do not perceive either a mistake of law or an abuse

of discretion. Accordingly, we affirm the order of the district affirm 

court.

Costs of the appeal shall be assessed against the

defendant-appellant.

-15-