139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Andre SALAMOUNI, Plaintiff-Appellant,
v.
Daiwa Bank, Limited, and WSR Servicing Company, Inc.,
Defendants-Appellees.
 No. 97-2797.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 13, 1998.
Decided Feb. 11, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 7705 Charles R. Norgle, Sr., Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. KENNETH F. RIPPLE, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Andre Salamouni ("Salamouni") filed suit against The Daiwa Bank, Limited ("Daiwa") claiming a violation of the Employment Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1001-1461 and a breach of contract under state law. Salamouni claimed that Daiwa illegally denied him medical insurance benefits following his retirement as a Daiwa executive in 1995. On April 2, 1996, the district court dismissed Salamouni's breach of contract claim by minute order on the ground that it was preempted by ERISA, Salamouni does not challenge that dismissal on appeal. The district court subsequently granted summary judgment for Daiwa on the ERISA claim, 966 F.Supp. 672 (N.D.Ill.1997), and Salamouni filed this appeal. For the reasons stated below, we affirm.
 
 I. FACTS
 
 2
 For twenty-six years, Salamouni was an employee of Lloyds Bank PLC ("Lloyds") and its predecessors. During that time he participated in Lloyds' employee benefit plan, which included medical insurance coverage for employees and their dependents both during employment and after retirement. Salamouni does not dispute that the plan reserved Lloyds' right to amend, modify, or terminate the program at its sole discretion.
 
 
 3
 In 1989, Lloyds agreed to sell its United States commercial banking division to Daiwa. Various Lloyds officials and at least one Daiwa official orally assured employees, including Salamouni, that Daiwa would continue their employment and that their benefits and terms of employment would be at least as good with Daiwa as they had been with Lloyds. On December 21, 1989, Daiwa's Managing Director and General Manager, Kenji Yasui, sent a letter to Lloyds' U.S. commercial banking executives, including Salamouni. The letter promised that Daiwa would "establish employee benefit plans ... similar to" the Lloyds plans and would fund the plans sufficiently "to insure a complete carry-through of plan benefits on terms no less favorable to you and your colleagues who join Daiwa." The letter included a space for the recipient's signature, and Salamouni signed it, indicating that he accepted Daiwa's offer of continued employment. At the time, Salamouni would have been eligible to retire from Lloyds rather than accept Daiwa's offer. Lloyds, apparently, is still providing health insurance benefits to its retirees. Salamouni maintains that he would have opted to retire had he known that Daiwa might not provide him with that benefit.
 
 
 4
 Salamouni worked as a Vice-President for Daiwa until 1995, at which time he retired. Daiwa published in the meantime three written documents concerning its employee benefits programs, one each in 1990, 1992, and 1995. The 1990 plan booklet explicitly reserved Daiwa's right to modify or amend the plan, and the 1992 and 1995 summary plan descriptions did not provide for retiree medical insurance coverage. The district court ruled that, because the version of the 1990 plan booklet that Daiwa provided did not apply to executives such as Salamouni, it would not rely on that document for purposes of summary judgment. See 966 F.Supp. at 678. The court did, however, utilize the 1992 and 1995 summary plan descriptions in reaching its decision.
 
 II. THE DISTRICT COURT'S DECISION
 
 5
 Salamouni argued that the 1989 letter from Yasui and the oral statements by Lloyds and Daiwa officials modified the then-existing benefits plan by vesting the retirement medical insurance coverage and rendering it irrevocable. Daiwa countered that the letter and statements could not, under ERISA, have modified the plan. Even if such a modification did take place, Daiwa claimed, it could only have entitled Salamouni to a continuation of the plan terms under Lloyds' 1987 description, which included the employer's right unilaterally to modify or terminate benefits. This last contention states the approach that the district court took: the court held that ERISA precluded the modification of a benefit plan by oral statements, see Doe v. Blue Cross & Blue Shield of Wisc., 112 F.3d 869, 875-876 (7th Cir.1997), but operated under the assumption that the Yasui letter, as a written contract offer that Salamouni accepted by his signature, could and did effect such a modification. 966 F.Supp. at 677. It then held, however, that the letter entitled Salamouni only to a continuation of the benefit plan he held as a Lloyds employee, including the provision that reserved Lloyds' (and thus Daiwa's) right to alter the plan at its sole discretion. Id. at 678. The court cited this Court's decision in Murphy v. Keystone Steel & Wire Co., 61 F.3d 560 (7th Cir.1995), where we stated that "the express termination language [in a benefit plan] is plainly inconsistent with any intent to vest benefits," id. at 567. When Daiwa elected in the 1992 summary plan description to eliminate the retirement medical benefit, the court held, Salamouni was bound by the change. 966 F.Supp. at 678-679.
 
 III. CONCLUSION
 
 6
 This Court has little to add to the district court's effective statement. Although it is an unresolved question whether a document such as the Yasui letter can modify a benefit plan under ERISA, the answer may await a case in which it will affect the outcome. Here the district court correctly held that even if such a modification occurred, Salamouni could not win his case. We therefore affirm that court's grant of summary judgment for Daiwa.
 
 AFFIRMED