**George FERGUSON, Plaintiff–Appellant,**

v.

**WM. WRIGLEY JR. COMPANY and Aetna Life Insurance Co., Defendants–Appellees.**

No. 00–1742.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 14, 2001 *.

Decided Aug. 15, 2001.

Rehearing Denied Nov. 13, 2001.

---

* After an examination of the briefs and the

record, we have concluded that oral argu-

Before POSNER, RIPPLE, DIANE P. WOOD, Circuit Judges.

## ORDER

George Ferguson began working for the Wm. Wrigley Jr. Company in 1980 as a flavor chemist but, he admits, quit his job in May 1984 because he was mentally ill. Approximately thirteen years later Mr. Ferguson filed this suit, seeking to collect benefits under a long-term disability plan sponsored by Wrigley, insured by AETNA Life Insurance Co., and governed by ERISA. 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment for the defendants, concluding that the suit was untimely. On appeal Mr. Ferguson principally argues that his mental illness prevented him from filing suit and thus tolled the three-year limitations period specified by the plan. We affirm.

We start with the disability plan, which limits the time for filing suit: "No action at law or in equity shall be brought to recover on this policy after the expira-

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. Fed. R.App. P. 34(a)(2).

tion of three years after the time written loss is required to be furnished." Written proof of loss, in turn, must be filed within ninety days of the qualifying period, which is twelve months of total disability. This contractual limitations period is enforceable, and Mr. Ferguson does not assert otherwise. *See Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 874–75 (7th Cir.1997) (concluding that nearly identical contractual limitations period was reasonable and thus enforceable).

As best we can tell from Mr. Ferguson's complaint, he allegedly became disabled in 1984. He first had to satisfy the one-year qualifying period (which we will assume he did), putting him into the year 1985, and he then had ninety days from that date to submit written proof of loss. Mr. Ferguson did not file written proof of loss, so he had three years from the expiration of the ninety days to sue, which puts the accrual date for any policy claim somewhere in 1988. This suit was not filed until approximately ten years later. As the district court correctly concluded, Mr. Ferguson's suit is time-barred.

Mr. Ferguson, nevertheless, maintains on appeal that he was mentally ill from 1984 until the time he filed suit, and thus the three-year limitations period was tolled. We have not before considered whether mental illness may serve to stay a contractual limitations period where the contract itself includes no explicit provision for such tolling. And we have no occasion to decide that question here, for even assuming tolling applies, Mr. Ferguson did not demonstrate that his mental illness prevented him from managing his affairs and "thus from understanding his legal rights and acting upon them." *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996).

We do not doubt that Mr. Ferguson's mental illness limits his ability to function. He has been admitted to psychiatric hospitals, although those admittances were vol-untarily and occurred shortly after he quit his job at Wrigley. But all things considered, in the thirteen years preceding the filing of this suit, Mr. Ferguson acted in manner that simply is inconsistent with his assertion that he was incapable of managing his affairs and thus did not understand his legal rights. During that time, Mr. Ferguson interviewed for jobs, worked as a temporary employee, maintained checking and savings accounts, renewed his driver's license, drove a car, applied for and received a firearm identification card, sold his car, used credit cards, communicated with creditors, prepared and filed a pro se bankruptcy petition, applied for public aid and social security benefits, and consulted with attorneys.

More to the point here, Mr. Ferguson understood at least as early as 1984 that he might have a claim to disability benefits. He authorized family friend and insurance broker Jerome Mancuso to contact Wrigley about his eligibility for long-term disability benefits. After Wrigley responded to Mancuso's inquiry by letter in October 1984—Wrigley said Mr. Ferguson was not entitled to benefits—Mancuso advised Mr. Ferguson to hire a lawyer. Mr. Ferguson testified during his deposition that he understood that he had a disability claim at that time, but did not pursue the matter because he was "paranoid." The evidence of record amply shows that Mr. Ferguson was capable of managing his affairs and understanding his legal rights; therefore, the district court properly rejected Mr. Ferguson's tolling argument.

■ Mr. Ferguson next contends that the defendants should be estopped from relying on the three-year limitations period because Wrigley told him in that 1984 letter that he was not entitled to any benefits under the plan. But Wrigley's letter consists of nothing more than a denial of liability. And there is no suggestion in the

record that Wrigley engaged in any conduct that caused Mr. Ferguson to miss the three-year deadline. *See Doe,* 112 F.3d at 875–76.

Lastly, Mr. Ferguson argues generally that the defendants acted in "bad faith." But this argument is perfunctory and undeveloped and therefore is waived. *See Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049, 1057 n. 5 (7th Cir.2000).

AFFIRMED.