In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2531

ALBERT G. ABENA, D.D.S.,

*Plaintiff-Appellant*,

*v.*

METROPOLITAN LIFE INSURANCE
COMPANY and AMERICAN DENTAL
PARTNERS, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 495—**Rudolph T. Randa,** *Chief Judge.*

ARGUED JANUARY 23, 2008—DECIDED SEPTEMBER 16, 2008

Before MANION, ROVNER and EVANS, *Circuit Judges*.

ROVNER, *Circuit Judge.* Albert G. Abena worked as a
dentist for American Dental Partners, Inc. ("American
Dental") from 1993 until he became disabled in 2000. He
applied for long term disability benefits under a plan
sponsored by his employer and administered by Metro-

politan Life Insurance Co. ("MetLife"), which was also the plan fiduciary. MetLife initially approved the claim and paid Abena benefits under the plan for approximately two years. After learning that Abena was employed at a new job, MetLife re-evaluated his disability status and determined that he no longer was disabled under the plan's definition. MetLife terminated Abena's benefits as of the date the company determined he no longer was disabled. After pursuing internal remedies to challenge the termination, Abena filed suit in the district court in 2006. The district court concluded that the suit was not timely filed and granted summary judgment in favor of the defendants. Abena appeals and we affirm.

American Dental sponsored a Long Term Disability Benefits Plan ("Plan") for eligible employees. Under the Plan, employees who became disabled were paid benefits following an "Elimination Period" which began on the day the employee became disabled and ended after ninety continuous days of disability. An employee wishing to claim benefits was required to supply a "proof of Disability" within three months after the end of the Elimination Period.[1] The employees were thus required to file the proof of Disability within three months plus ninety days of the onset of the Disability, or within approximately six months. The Plan also provided limitations for legal actions related to the Plan:

> No legal action of any kind may be filed against us:

---

[1] "Disability" is a defined term in the Plan.

1.  within the 60 days after proof of Disability has been given; or

2.  more than three years after proof of Disability must be filed. This will not apply if the law in the area where you live allows a longer period of time to file proof of Disability.

R. 24, at D 0319.

Abena worked for American Dental from 1993 through December 4, 2000. On October 23, 2000, Abena submitted a claim to American Dental for long term disability benefits, asserting that his disability commenced on May 16, 2000. American Dental forwarded the claim to its Plan administrator and fiduciary, MetLife, on November 8, 2000. On March 1, 2001, after reviewing the claim, MetLife approved Abena's claim and granted benefits retroactive to August 15, 2000, the end of the Elimination Period. At some point, American Dental learned that Abena was again working as a dentist. The company passed this information on to MetLife, and on January 15, 2002, MetLife informed Abena that it intended to review his continued eligibility for benefits. MetLife requested that Abena supply additional information about his disability and also conducted an investigation into Abena's health status, which included video surveillance and a review of his records by an independent physician. After the review process, MetLife notified Abena on August 8, 2002 that he no longer met the Plan's definition of Disability. Abena's benefits were therefore terminated as of August 9, 2002. On January 14, 2003, Abena appealed MetLife's decision through an internal appeals process. MetLife ordered

another independent physician review of Abena's file, and on April 16, 2003 affirmed its decision to terminate his benefits.

On April 17, 2006, Abena filed this ERISA suit against American Dental and MetLife, claiming entitlement to disability benefits after the August 9, 2002 termination date. The defendants moved for summary judgment on two grounds. First, they asserted that the decision to terminate benefits was not arbitrary or capricious but rather was a reasonable determination supported by substantial evidence in the administrative record. Second, they argued that Abena failed to file the law suit within the time limitation prescribed by the Plan. The district court granted summary judgment in favor of the defendants, agreeing that the suit was untimely. The court did not reach the merits of the dispute. Abena appeals.

The district court relied on our decision in *Doe v. Blue Cross Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997), in finding the suit untimely. In *Doe*, the plaintiff sought treatment for obsessive compulsive disorder in 1989. His employer-sponsored health insurance plan initially paid for his psychiatric treatment but later stopped paying and formally denied coverage. On August 17, 1990, Blue Cross, the plan administrator, notified Doe that it would not pay for any psychiatric treatment rendered after December 1, 1989. On September 27, 1994, after completing an internal appeals process, Doe sued to recover benefits for treatment provided to him between December 1989 and May 31, 1991. As with the Plan in Abena's action, Doe's plan limited the time-

frame in which suits could be filed. Doe's plan provided that "no legal action may be commenced . . . later than three (3) years from the time written proof of loss was required to be filed. Written proof of loss must be filed within ninety (90) days of the date of service. This means that any legal action must be commenced within thirty-nine (39) months of the first date of services on which the action is based." *Doe*, 112 F.3d at 872-73. The district court read this provision to mean that, for Doe to recover all of the benefits he was seeking, he was required to sue by March 1993, thirty-nine months after the December 1989 psychiatric services he received. The court also concluded that the last day on which he could sue for any benefits was August 29, 1994, a date that fell thirty-nine months after May 31, 1991, the final date on which services were rendered. Another provision in Doe's plan prohibited suits from being filed until the exhaustion of the claimant's internal remedies. For Doe, that process lasted until September 25, 1991, leaving seventeen months left in the contractual limitations period before the March 1993 cut-off date to sue for full benefits.[2]

---

[2] Abena misconstrues the plan in *Doe*, arguing that the period of limitations there did not begin to run until continuing benefits had been denied, not when the initial proof of claim had to be filed. On the contrary, the period of limitations in Doe's plan was triggered by the provision of services for which benefits were sought. A claimant was required to file a written proof of loss within ninety days of the date of the service, and was required to file suit within three years after the

(continued...)

We observed that ERISA contains no statute of limita-
tions, and that the usual practice in that instance is to
borrow the limitations period of the most closely
analogous state or federal statute. We also noted the
prevailing rule in contract law that contractual limitations
periods that are shorter than the statutory period are
permissible, provided they are reasonable. *Doe*, 112 F.3d at
874. We adopted that prevailing rule and held that contrac-
tual limitations, if reasonable, are enforceable in suits
under ERISA, regardless of state law. 112 F.3d at 875. We
deemed the thirty-nine month period reasonable in
general and under the circumstances of Doe's case. Even
though the internal appeals process was protracted, the
employee, who was represented by counsel throughout
the process, still had seventeen months in which to
bring the suit before the period expired. We likened a suit
under ERISA, following the completion of an internal
appeals process, to a suit to set aside an administrative
decision, an action that typically must be filed within
thirty or sixty days of the decision. 112 F.3d at 875. A
seventeen month period was therefore more than suf-

---

[2] (...continued)
written proof of loss was required to be filed. *See Doe*, 112 F.3d
at 872-73. Obviously, if benefits were granted for certain
services, there would be no reason to file suit, and when
benefits were denied, the limitations period ran from ninety
days after the time proof of loss was required to be filed for
that particular service. There is no real difference between
the operation of the plan in *Doe* and the Plan under which
Abena sought benefits.

ficient to meet the standard of reasonableness. We also remarked that the doctrine of equitable estoppel would protect ERISA claimants and would discourage plan administrators from dragging on the internal appeals process in order to shorten the time left for filing suit. *Doe*, 112 F.3d at 876.

Applying *Doe* to Abena's situation, the district court found that the Plan required a participant to file suit no later than three years from the time proof of Disability was required to be filed. The Plan, in turn, required that proof of Disability must be filed no later than three months after the Elimination Period. The Elimination Period is the ninety days of continuous Disability following the onset of the Disability. The district court calculated that Abena's Elimination Period ended on August 15, 2000. He was required to submit his proof of Disability by November 15, 2000, and should have filed any law suit by November 15, 2003. Because Abena did not file the suit until April 17, 2006, the suit was not timely. The court noted that MetLife did not complete the internal appeals process until April 16, 2003, but Abena still had seven months in which to file suit before the November 15, 2003 contractual deadline. Under *Doe*, the district court reasoned that seven months was a reasonable amount of time in which to file the suit, and granted summary judgment in favor of the defendants.

Our review of that judgment is *de novo*. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Abena argues that *Doe* is factually distinguishable and not controlling in his case. Abena points out that his claim

initially was approved and he was paid for two years before the Plan administrator decided to terminate benefits. In that circumstance, Abena argues, a three-year limitations period is unreasonable. After all, Abena points out, a plan could pay benefits for three years and then stop paying without any recourse for the employee. Abena also points out that the contractual period of limitations appears in a section titled "Claims" and contends that it should apply only to the initial claim decision and not to subsequent terminations of claims. Instead, he maintains, the Wisconsin statute of limitations for contract claims should apply. Because the Wisconsin statute provides for a six-year period, he argues that his suit was timely.

It is true that the manner in which the Plan sets the limitations period is better suited to the initial claim decision than it is to claims that are initially granted and subsequently terminated, but that fact is not controlling. A poorly drafted contract term is still a contract term. This contract term allows three years from the time the proof of Disability must be submitted in which to file suit. Under *Doe*, a contractual limitations period is enforceable in an ERISA action so long as it is reasonable. 112 F.3d at 874-75. *See also White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 250 (4th Cir.), *cert. denied*, 128 S. Ct. 619 (2007) (agreeing with *Doe* that ERISA affords plans the flexibility to set contractual limitations periods of varying lengths); *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948 (8th Cir. 2002) (upholding a contractual limitations period in an ERISA plan so long as it is not unreasonably short); *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th

Cir. 1998) (agreeing with *Doe* that contractual limitations periods in ERISA actions are enforceable, regardless of state law, provided they are reasonable). We can certainly imagine circumstances in which the application of this provision would not be reasonable. For example, if the employer paid the claim for three or more years and then terminated payments, it would be unreasonable to enforce a limitations period that ended before the claim could have even accrued. Or if the appeals process was so protracted that the claimant was unable to file suit within the contractual period, the application of this provision would not be reasonable. But that is not what happened here. Even though the claim initially was granted and then terminated two years later, Abena still had seven months following the conclusion of the internal appeals process in which to file his suit in the district court. By his own admission at oral argument, there was no reason he could not file his suit during that time. Indeed, he was represented by counsel during that time. In these circumstances, application of the contractual limitations period is not unreasonable.

Nor are we persuaded that the placement of the contractual limitations period in a section titled "Claims" should change the outcome. The provision clearly states that "[n]o legal action of any kind may be filed against" the Plan after the limitations period. This language is broad enough to cover both initial denials of claims and claims that initially are granted and then later are terminated. Again, the Plan language is not particularly well suited to claims which are initially granted and then later terminated. A limitations period that begins when the

internal appeals process ends would be easier to apply to all kinds of claims, but we are not here to rewrite the Plan. Our task is to determine whether application of the contractual limitations period is reasonable in these circumstances. We agree with the district court's conclusion that it is. The judgment of the district court is therefore

AFFIRMED.