**Fanny SALCEDO, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civil Action 96–11567—MEL.**

United States District Court, D. Massachusetts.

Feb. 20, 1998.

---

Ronald Beauregard, Fiorentini Law Office, Haverhill, MA, for plaintiff.

Edward S. Rooney, Jr., Lyne, Woodworth & Evarts, Boston, MA, for defendant.

LASKER, District Judge.

This is an action to recover disability benefits under a group insurance policy. Fanny Salcedo sues under section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132, to contest the defendant's determination that she is not entitled to benefits. Defendant John Hancock Mutual Life Insurance Company moves for summary judgment on the grounds that the suit is time-barred both by the applicable statute of limitations under ERISA, and by the contractual limitations period provided in the policy.

The facts are undisputed. On September 9, 1989, Ms. Salcedo suffered a disabling injury while working at Wang Laboratories, Inc. As part of its benefit plan, Wang provided its employees disability benefits through a group insurance policy

issued by John Hancock.[1] The policy defines "total disability" for the first two years following an injury as an impairment "which keeps you from doing every duty of *your* occupation," and thereafter as an impairment "which keeps you from doing every duty of *any* occupation or employment for which you are qualified" (emphasis supplied).

Ms. Salcedo submitted a claim for benefits, and John Hancock determined that she was totally disabled and began paying her benefits. On May 13, 1991, John Hancock wrote to Ms. Salcedo explaining that the second definition of "total disability" would become applicable in September 1991, since two years would have then passed since her injury, and advising her that it would notify her when it determined whether she would remain eligible for benefits. John Hancock informed Ms. Salcedo's attorney of the newly applicable definition by letter of October 29, 1991, and on September 8, 1992, wrote Ms. Salcedo a letter concluding that she was not entitled to benefits after August 23, 1992 because she did not satisfy the second, and now applicable, definition of disability. The letter indicated that Ms. Salcedo could respond with questions or submit additional medical information for review. Three weeks later, Ms. Salcedo's attorney submitted additional materials and appealed the denial of benefits. On June 15, 1994, the defendant upheld its denial in a four-page letter that reviewed the available medical evidence. Plaintiff filed this action on June 19, 1996.

John Hancock argues that plaintiff's claim is barred because both the contractual limitation period and the applicable statute of limitations under ERISA require her to have filed suit within three years of the September 8, 1992 denial of benefits. Ms. Salcedo replies that, under both ERISA and the policy, the limitations period is established by reference to state

law, and the applicable period under Massachusetts law is the six-year statute of limitations for contract actions. She maintains further that her action was timely instituted even if the applicable limitations period is three years, because the appropriate accrual date is not the initial denial of benefits but the denial of her appeal on June 15, 1994.

Two distinct questions must be answered. First, what is the appropriate limitations period within which Ms. Salcedo was required to file suit? Second, what is the accrual date from which the limitations period should be measured?

*The Limitations Period*

*Applicable Limitations Period under ERISA*

■ John Hancock argues first that plaintiff's claim is barred under ERISA by the limitations period set forth in 29 U.S.C. § 1113(2). That section provides

[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after … three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

Defendant maintains that this statute of limitations applies to Ms. Salcedo's cause of action under 29 U.S.C. § 1132 to recover benefits. Plaintiff challenges John Hancock's reliance on this section on the grounds that § 1132 does not fall within the "part" of ERISA governed by the § 1113 limitations period.

Section 1113 is found in Part 4 of ERISA, entitled "Fiduciary Responsibility," and by its terms applies only to actions "with respect to a fiduciary's breach of any responsibility, duty or obligation under *this part*, or with respect to a violation of *this part* " (emphasis supplied). Section 1132 is found in a different part of

---

1. While the appropriate defendant in a suit to recover benefits from an employee benefit plan is ordinarily the plan itself, John Hancock has agreed to waive any argument that it is not a proper defendant and defend the suit on its merits.

ERISA—Part 5, entitled "Administration and Enforcement." Ms. Salcedo does not allege a breach of fiduciary duties. Instead, she sues under § 1132(a)(1)(B) to recover benefits allegedly due under the terms of the plan. *See Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1290 (10th Cir.1991) (reversing a district court decision applying the § 1113 limitations period to a § 1132 claim because such claims do "not involve fiduciary responsibilities regarding financial solvency or accountability as contemplated by § 1113"); *see also Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.) (claim for past due benefits is "a simple contract claim" rather than a claim based on "violation of . . . statutory rights under ERISA"), *cert. denied* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988).

Because of the limited applicability of § 1113, it is appropriate to apply the most analogous state limitations period to actions filed under § 1132. Although the First Circuit has not addressed the question, this conclusion has been accepted nearly universally by courts that have. *See, e.g., Williams v. UNUM Life Ins. Co. of Am.,* 113 F.3d 1108, 1111 (9th Cir.1997) (analogous state limitations period controls suit for benefits under § 1132); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65 (7th Cir.1996) (same); *Dameron v. Sinai Hosp. of Baltimore,* 815 F.2d 975, 981 (4th Cir.1987) (same); *Meade v. Pension Appeals and Review Comm.,* 966 F.2d 190, 194–95 (6th Cir.1992) (same); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.) (same), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

Ms. Salcedo contends that the most analogous state limitations period is the six-year statute of limitations applicable to contract actions, M.G.L. ch. 260, § 2. John Hancock counters that a closer parallel is found in M.G.L. ch. 175, § 108 ¶ 3(a)(11), which requires certain health insurance policies to include a provision stating that no action may be brought more than three years after proof of loss is due under the policy. Plaintiff replies that this section is inapplicable because it explicitly provides that group policies, like the one at issue here, fall outside its coverage. M.G.L. ch. 175, § 108 ¶ 8 ("Nothing in this section shall apply to or affect . . . any blanket or group policy of insurance.")

Because Massachusetts law reflects a judgment that different standards are appropriate for different types of insurance contract, and a determination not to shorten the limitations period applicable to group policies, John Hancock's reliance on M.G.L. ch. 175, § 108 is not persuasive. The limitations period for contract actions provides a closer analogy. Ms. Salcedo's claim is essentially a breach of contract claim—she alleges she was not paid the benefits due her under the terms of the insurance policy. Accordingly, it is appropriate to borrow the six-year statute of limitations from M.G.L. ch. 260, § 2 for claims to recover benefits under ERISA. Judge Zobel applied the same statute of limitations to a claim for interference with pension rights brought under § 1132. *Greene v. K–Mart Corp. Employee's Retirement Pension Plan,* 1986 WL 15473 (D.Mass. Dec.24, 1986). Many other courts have analogized to state statutes of limitations for contract claims to determine the limitations period for ERISA actions. *E.g., Meade,* 966 F.2d at 195; *Wright,* 925 F.2d at 1291; *Daill,* 100 F.3d at 65; *Miles,* 698 F.2d at 598.

*Effect of Contractual Limitations Period*

■ However, while the limitations period for a claim to recover ERISA benefits is ordinarily drawn from the most analogous state statute of limitations, in this case the policy contains its own contractual limitations period. The policy provides that

[n]o legal action or suit to recover on the Policy . . . may be brought more than 3 years after the time [written proof of loss] must be furnished. But, if [this]

time limit is less than permitted by state law where you reside when the loss occurs, that limit is extended to agree with the smallest limit the law of that state allows.

Defendant reads this provision as establishing a three-year limitations period, which would be lengthened in suits filed by residents of states that forbid contractually establishing a period this short. Because Massachusetts law allows contracting parties to agree upon a limitations period, so long as it is reasonable, defendant maintains that the policy's three-year period governs plaintiff's claim. Plaintiff interprets the policy differently, arguing that the three-year period must be extended if it is shorter than the limitations period established by state law. Plaintiff contends that since the six-year limitations period provided by Massachusetts law is longer than the policy period, the six-year period governs her claim.

In determining which interpretation is correct—or whether the provision is ambiguous—it should be remembered that the "terms of an ERISA policy are to be interpreted under principles of federal substantive law." *Vickers v. Boston Mutual Life Ins. Co.*, 135 F.3d 179, 180–81 (1st Cir.1998). The *Vickers* court noted that "a fundamental principle" of interpretation requires "look[ing] at common understanding," and emphasized that policies should be interpreted in accord with the "plain meanings" understood by "the average person,"—a process which should not "call[ ] for the services of a logician." *Id.* (citation omitted). Because federal law in this area is still in a "formative stage," the First Circuit turned to Massachusetts law after explaining that it would rely on " 'common-sense canons of contract interpretation' and borrow the 'best reasoned' concepts from state law." *Id.* (citation omitted).

The Supreme Judicial Court of Massachusetts most recently addressed the standards for finding a contractual provision ambiguous in *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 688 N.E.2d 951 (1998). In *Citation*, the SJC held that a term should be found ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Id.* The *Citation* court noted that alternate definitions would often be possible, but explained that the "existence of multiple dictionary definitions" is insufficient to create an ambiguity. *Id.* In concluding that there was no ambiguity in the term "vacant land"—since a reasonably intelligent person would understand it to refer to land with no structures rather than land that was unoccupied—the SJC relied on the context and presumed rationale of the policy provision.

A good argument may be made that the limitations provision in the John Hancock policy is ambiguous, and therefore should be read against the defendant, who drafted the policy. The provision could be read to ask whether the three-year period is less than the time state law permits for filing this type of suit, rather than whether state law allows parties to contractually reduce the limitations period to this short a period. Plaintiff could argue that the first reading favors her position—since state law allows suit on a contract to be filed up to six years after the claim arises, the contractual period must be extended to agree with that period.

Language similar to that in the John Hancock policy has been held to be ambiguous. In *General Instrument Corp. v. American Home Assurance Co.*, 397 F.Supp. 1074, 1077 (E.D.Pa.1975), the court found a provision establishing a twelve-month limitations period "unless a longer period of time is provided by applicable statute" ambiguous, and held that, on the construction most favorable to the insured, Pennsylvania's six-year statute of limitations for contract actions took precedence over the contractual limitation. The court rejected the insurance company's argument that only a statute invalidating limitation of action clauses could affect the

policy's limitation period, and found the general statute of limitations on contract actions could be an "applicable statute" which precluded reliance on the policy's twelve-month limit. *See also Queen Tufting Co. v. Fireman's Fund Ins. Co.,* 239 Ga. 843, 239 S.E.2d 27 (Ga.1977) (same provision overridden by Georgia's six-year limitation on contract actions); *but see Graingrowers Warehouse Co. v. Central Nat'l Ins. Co. of Omaha,* 711 F.Supp. 1040, 1045(E.D Wash.1989) (same provision is simply a conformity clause, and the twelve-month period controls unless state law invalidates such a limitation); *Wabash Power Equip. Co. v. International Ins. Co.,* 184 Ill.App.3d 838, 133 Ill.Dec. 94, 540 N.E.2d 960 (1989) (same provision unaffected by general statute of limitations).

Nonetheless, while the policy provision at issue here could have been drafted more clearly, it is not sufficiently imprecise to create an ambiguity which must be read against the defendant—particularly in light of the narrow definition of ambiguity articulated by the SJC in *Citation.* It would be a mistake, in asking whether the three-year contractual limitations period is "less than permitted by state law," to consider only the period established by the general statute of limitations and ignore the permissible limitations of that period. The general statute of limitations does not exhaust the relevant field of "state law"— the permissibility of contractual modifications of the statutory limitations period is also a matter addressed by state law. In interpreting a provision nearly identical to the one under consideration, the court in *Green v. John Hancock Mutual Life Ins. Co.,* 601 S.W.2d 612 (Ky.Ct.App.1980) applied the shortened limitations period provided by the policy. The *Green* court explained that "although there is a fifteen years general statute of limitation affecting contracts, such can, under law, be limited," and held that it had to consider "the full spectrum of applicable law" in determining whether the limitation period in the policy was "less than that permitted" by state law. 601 S.W.2d at 613.

*The Accrual Date*

◼ Although the limitations period in an action to recover benefits under ERISA is borrowed from state law, federal law determines the date on which the cause of action accrues and from which the limitations period is measured. *See, e.g., Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1138 (7th Cir.1992); *Northern Cal. Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.,* 906 F.2d 1371, 1372 (9th Cir.1990). While the First Circuit has not addressed this matter in the context of ERISA claims, the rule is consistent with First Circuit law holding that federal law governs the accrual dates for claims under various federal statutes which draw their limitations periods from state law. *See, e.g., Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172 (1st Cir.1997) (§ 1983 action); *Janigan v. Taylor,* 344 F.2d 781 (1st Cir.) (action based on Securities Exchange Act), *cert. denied* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *International Ass'n of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works,* 928 F.Supp. 83 (D.Mass.1996) (suit brought under Labor Management Relations Act).

◼ A cause of action for recovery of benefits under ERISA accrues when an application for benefits is formally denied. *See, e.g., Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 62 (7th Cir.1996); *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990). The parties in this case differ as to whether this oft-recited standard means that a cause of action accrues when an application is initially rejected, or only after the final denial of a claimant's appeal. Most cases that hold that the denial of benefits is the appropriate accrual date draw no distinction between an initial denial and the denial of an appeal, and thus offer no help in resolving the parties' dispute in this case. *See, e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996)

(cause of action under ERISA ordinarily accrues "when a fiduciary denies a participant benefits"). Of the cases which discriminate between an initial denial and the rejection of a claimant's appeal, the majority—and the better-reasoned—are those which conclude that the limitations period is more properly measured from the denial of the appeal.

■ Several cases have reasoned that, because ERISA has been interpreted to include an administrative exhaustion requirement, no cause of action can arise until a claimant has completed the appeals process. *See, e.g., Held,* 912 F.2d at 1206; *Mitchell v. Shearson Lehman Bros.,* No. 97 Civ 0526, 1997 WL 277381 (S.D.N.Y. 1997). ERISA requires employee benefit plans to "afford a reasonable opportunity ... for a full and fair review" of any denial of benefits. 29 U.S.C. § 1133(2). The First Circuit, among others, has held that a participant of an ERISA plan must exhaust the plan's internal remedies before being permitted to pursue a claim for benefits in court. *E.g., Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825–26 (1st Cir.), *cert. denied* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Since a cause of action accrues when a plaintiff may first maintain suit, it follows that the limitations period on a claim for benefits under ERISA should be measured from the date on which a participant's internal remedies are exhausted, that is, the date on which the appeal prescribed by ERISA is denied. *See Mitchell,* 1997 WL 277381, at *4 ("[A] § 1132 claim for denial of benefits accrues when a claimant exhausts a plan's internal remedies because prior to that, such a claim may be dismissed."); *Dameron v. Sinai Hosp. of Baltimore, Inc.,* 595 F.Supp. 1404, 1414 (D.Md.1984), *aff'd in part and rev'd on other grounds,* 815 F.2d 975 (4th Cir.1987) (because of interplay between exhaustion and the statute of limitations, cause of action accrues when beneficiary is notified of reconsideration decision).

Moreover, accrual upon denial of a claimant's appeal furnishes the fairest result. It avoids shortening the limitations period by measuring it from a date earlier than that on which the plaintiff would be permitted to file suit. Time spent in pursuing internal appeals should not be charged to the plaintiff, for there has been no unequivocal repudiation of a plaintiff's right to benefits until the review is concluded. Furthermore, as a policy matter, a limitation period that overlaps the time for administrative appeals would not foster, and might well hinder, the goals of the internal appeals process. "Allowing a reasonable period of time to pursue [a] claim through administrative channels insures to all the benefit of internal administrative dispute resolution." *Dameron,* 595 F.Supp. at 1414.

Many other courts have concluded, without elaboration, that the statute of limitations on a cause of action for benefits under ERISA begins to run only after a claimant's appeal has been denied. *See, e.g., Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 66–67 (7th Cir.1996) (cause of action arose when appeal was denied); *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 451 (6th Cir.1992) (same); *Martin v. Construction Laborers Pension Trust for S.Cal.,* 947 F.2d 1381, 1386 (9th Cir.1991) (same); *Schendel v. Pipe Trades Dist. Council No. 36 Pension Plan,* 880 F.Supp. 710, 714 (N.D.Cal.1995) (same); *Carter v. American Tel. and Tel. Co.,* 870 F.Supp. 1438, 1445–46 (S.D.Ohio 1994) (claim accrued when appeal committee issued final denial), *vacated on other grounds,* 1996 WL 656571 (1996); *Hemphill v. Unisys Corp.,* 855 F.Supp. 1225, 1234 (D.Utah 1994) (accrual date is denial of appeal); *Gray v. Greyhound Retirement and Disability Trust,* 730 F.Supp. 415, 417 (M.D.Fl.1990) (same). Indeed, one of the cases John Hancock cites to establish the date on which Ms. Salcedo's claim arose belongs on this list: in *Freeman v. Sickness and Accident Disability Plan of AT&T Technologies Inc.,* 823 F.Supp. 404,

409 (S.D.Miss.1993), the court held that a cause of action arose only after a claim for benefits was rejected by the committee authorized to review an initial denial of benefits.

In this case, measuring the limitations period from the date on which Ms. Salcedo's appeal was denied seems especially appropriate since John Hancock's second denial was far more informative than its first. ERISA requires plans to provide a participant with adequate notice of a denial of benefits, "setting forth the specific reasons for such denial ... in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). John Hancock's initial denial of benefits n 1992 informed Ms. Salcedo in a conclusory fashion that she did not meet the definition of disability, but provided no medical or other explanation. Only with the denial of Ms. Salcedo's appeal did John Hancock set forth an analysis of the medical evidence on which it based its determination. Since it seems that Ms. Salcedo did not receive notice consonant with the goals of § 1133 until 1994, it is fitting to hold that this is the date on which her cause of action arose.

John Hancock cites only one case ruling that a cause of action for benefits under ERISA accrues when the plaintiff is first notified of the denial of benefits—and the force of that holding is undercut both because it was unnecessary to the decision, and because it was based on a case that reached a contrary conclusion. In *Patterson–Priori v. Unum Life Ins. Co. of Am.*, 846 F.Supp. 1102 (E.D.N.Y.1994), plaintiff's benefits were initially terminated in August 1989, and her appeal was denied in December 1989. Plaintiff requested reconsideration more than three years later, and the denial of benefits was upheld once more in May 1993. The filing of plaintiff's suit could have been timely only if her claim arose upon the denial on reconsideration in 1993. The court relied on *Dameron*, 595 F.Supp. 1404, in concluding that claimants could not "renew stale claims merely by requesting reconsideration of

'final' decisions." 846 F.Supp. at 1106–07 (quotation omitted). The *Patterson–Priori* court noted that the defendant had been under no obligation to entertain the request for reconsideration, and found that its consideration of the request did not formally reopen the plaintiff's claim for statute of limitation purposes. Although this finding was sufficient to dispose of the case, the court went on to state that the plaintiff's cause of action arose in August rather than December of 1989.

The *Patterson–Priori* court paid no attention to the distinction drawn in *Dameron* between a formal appeal and a later request for reconsideration of a final determination. *Dameron's* recognition of the significance of the appeal process mandated by ERISA makes its reasoning more persuasive than that of *Patterson–Priori*. While the *Dameron* court safeguarded the policy of repose by holding that claimants could not re-start the limitations clock by requesting reconsideration of a final denial of benefits, it realized that this policy was not threatened by measuring the limitations period from the denial of the single appeal that has been required under ERISA. The balance struck in *Dameron* seems the better reflection of ERISA's goals.

John Hancock also seeks to bolster its argument for an early accrual date by relying on *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir.1997) and *Chilcote v. Blue Cross & Blue Shield United of Wis.*, 841 F.Supp. 877 (E.D.Wis.1993). Defendant cites these cases to support its claim that the statute of limitations should not be tolled during administrative appeals, but fails to acknowledge that neither *Doe* nor *Chilcote* used the initial denial of benefits as the date of accrual. Instead, these cases accepted the establishment—through contractual limitation provisions—of accrual dates based on the time proof of loss was due. Both cases adopted the policy-dictated accrual date without question or explanation, despite a fleeting recognition in

*Doe* of the potential unfairness of using such a date. *Doe,* 112 F.3d at 873 ("[I]f the internal appeals process is at all protracted, the plaintiff's time for suing may be substantially compressed.").

██ Other courts faced with similar limitations provisions have refused to use the date proof of loss was due as the accrual date. In *Price v. Provident Life and Accident Ins. Co.,* 2 F.3d 986, 988 (9th Cir.1993), the court held that ERISA "does not permit" measuring a limitations period from the date proof of loss was required because that "would allow the insurer to simply bury a denial of coverage and wait for the statute of limitations to run" in direct contravention of ERISA's requirement that the insurer notify a claimant of any denial of benefits. In *Mitchell v. Shearson Lehman Bros.,* No. 97 Civ 0526, 1997 WL 277381 (S.D.N.Y. 1997), the court followed *Price* in refusing to accept plan-prescribed accrual dates. The question of when a cause of action for an ERISA violation accrues is a matter of federal law, and a court need not—and should not—defer to a policy provision that is inconsistent with federal law. *See also Lowry v. Aetna Life Ins. Co.,* 1996 WL 529211 (S.D.N.Y.1996) (rejecting a plan-prescribed accrual date because delays in an internal appeal ought not shorten the limitations period since ERISA was designed to remove "procedural obstacles" which have prevented participants from recovering benefits); *Patterson–Priori* (determining the accrual date under federal law despite a policy provision stating suit must be filed within three years of the time proof of claim is required). No suit for benefits can be maintained as of the date that proof of loss must be submitted because no denial has yet occurred. Accordingly, it seems clear that this is not an appropriate accrual date. *Cf. Williams v. UNUM Life Ins. Co. of Am.,* 113 F.3d 1108, 1111–12 (9th Cir.1997) (explaining that accrual provision measuring the limitations period from the time proof of loss was required is only applicable if claimant fails to provide such proof; if proof is submitted, cause of action does not accrue until benefits are denied); *but see Ingram v. Travelers Ins. Co.,* 897 F.Supp. 1160 (N.D.Ind.1995) (proof of loss is an acceptable accrual date because the exhaustion requirement is merely discretionary), *aff'd,* 78 F.3d 586 (7th Cir.1996).

Moreover, despite John Hancock's heavy reliance on the *Chilcote* and *Doe* cases, it is not at all clear that the reasoning of those cases would justify granting summary judgment for the defendant. The *Doe* court indicated that, where a plaintiff seeks to recover for a period of continuing disability, plaintiff may sue to recover for any time or services for which proof of loss was due within the limitations period even if he is foreclosed from seeking a full recovery.

Since Ms. Salcedo alleges she is suffering from total disability which continues to this date, she should be entitled to sue for any benefits for which proof of loss was due within the limitations period. If the accrual date set forth in the policy is accepted, then claims may be brought up to "[three] years after the time [written proof of loss] must be furnished." This would allow Ms. Salcedo to seek recovery of any benefits for which proof of loss was due within three years of the date she filed suit. While plaintiff might forfeit some benefits—those for which proof of loss was due more than three years before she filed suit—defendant would not be entitled to summary judgment because it is clear that for at least some of the benefits which Ms. Salcedo is seeking, proof of loss need not have been filed until within the limitations period.

Indeed, it appears that by the terms of the policy, Ms. Salcedo would not be barred from seeking any of the benefits she claims. The policy provides that written proof of loss "must be submitted within 120 days after the first month following the applicable Qualifying Disability Period." A "Qualifying Disability Period" for a period of disability is defined as the

*longest* of several time periods, of which the only fixed period is "6 consecutive months of total disability." Accordingly, an applicable Qualifying Disability Period must be at least six months long. Since Ms. Salcedo received benefits through August 23, 1992, the question is when she was required to submit written proof of loss to recover benefits allegedly due August 24, 1992 and thereafter. Because the time for filing proof of loss is defined in terms of Qualifying Disability Periods, it appears that such proof is to be submitted periodically. The six-month period beginning August 24, 1992 extends to February 24, 1993; 120 days from "the first month following" that six-month period is July 1, 1993. Since Ms. Salcedo filed suit on June 19, 1996, her suit is timely.

For the reasons stated above, John Hancock's motion for summary judgment is denied.

It is so ordered.