Mary ALCORN, Plaintiff,

v.

RAYTHEON COMPANY and Metropolitan Property & Casualty Insurance Company, a/k/a MetLife, Defendants.

No. Civ.A. 01–10573–REK.

United States District Court,
D. Massachusetts.

Nov. 21, 2001.

Marcel Murad, Boston, MA, for Plaintiff.

James F. Kavanaugh, Jr., Stephen S. Churchill, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Defendants.

## Opinion and Order

KEETON, District Judge.

### I. Pending Matter

The matter pending for decision arises from the following filings:

(1) Notice of Removal (Docket No. 1, filed April 6, 2001), attaching Plaintiff's Complaint as part of Exhibit A;

(2) Defendants' Motion to Dismiss (Docket No. 4, filed April 27, 2001), with Memorandum in Support of Defendants' Motion to Dismiss (Docket No. 5, filed April 27, 2001), and Affidavit of Alfred C. Phillips (Docket No. 6, filed April 27, 2001);

(3) Plaintiff Mary Alcorn's Opposition to Defendants' Motion to Dismiss (Docket No. 9, filed May 24, 2001).

### II. Factual and Procedural Background

Plaintiff Mary Alcorn was an employee of Defendant Raytheon Company ("Raytheon") on and before October 6, 1996. During that time, Raytheon provided plaintiff with "a Long Term Disability Benefits insurance policy, for which money was deducted regularly from her salary, to pay the premium." Complaint at 1. Defendant Metropolitan Property & Casualty Insurance Company ("MetLife") was the underwriter for the long term disability benefits plan provided to plaintiff by Raytheon on and before October 6, 1996. *Id.*

According to her complaint, on or about September 21, 1996, plaintiff fell down a set of stairs, became disabled, and "was unable to work." *Id.* Under her long term disability benefits plan's provisions, plaintiff became "eligible for benefits payable to an employee wholly and continually disabled." *Id.* Plaintiff was "under the treatment of a medical doctor whose prognosis was that she was totally disabled from September 21, 1996 and continuing to this date." *Id.* at 2.

Plaintiff alleges that:

[o]n or [a]bout October 30, 1996[t]he defendant Raytheon, fraudulently arranged for the Plaintiff to go to its Medical Department ostensibly to be examined by their doctors, knowing full well that it was only a subterfuge, and that Raytheon did not intend to examine her. . . . She was told that she would be terminated from her job if she did not cooperate. . . . [W]hen she complained that she was in pain, she was advised that an evaluation could not be performed due to her extreme pain. Unbeknown to the Plaintiff, she had been placed under surveillance that day by an

individual employed and/or retained by the Defendant Raytheon.

Complaint at 2.

Plaintiff further alleges that "[b]ased on the report of their investigator, [Raytheon] terminated the plaintiff's claim for benefits on October 6, 1996 without the benefit of any medical evidence to substantiate their decision." *Id.* Following the termination of her claim for benefits, plaintiff claims that she "made numerous demands upon the defendant Raytheon to pay her the monies owed her from October 30, 1996, to date, to no avail." *Id.* Plaintiff does not, in her filings, indicate whether or how she made these "demands" through the course of an internal appeals process for termination or denial of claims under the long term disability benefits plan.

On March 15, 2001, plaintiff filed the complaint in this civil action in Suffolk Superior Court, Commonwealth of Massachusetts, against Raytheon and MetLife for "monies owed her from October 30, 1996, to date, together with interest, cost and Attorney's fees." *Id.* The action was then removed to this court on April 6, 2001 because plaintiff makes a claim for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* ERISA claims are within the jurisdiction of the federal district courts.

The defendants now move, under Fed. R.Civ.P. 12(b)(6), to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted.

### III. Standard Applicable to Motions to Dismiss

In deciding defendants' Motion to Dismiss, this court must determine whether the Complaint states any claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). In doing so, the court accepts all well-pleaded factual assertions as true and draws all reasonable inferences from those assertions in plaintiff's favor. *Aybar v. Crispin–Reyes,* 118 F.3d 10, 13 (1st Cir. 1997).

### IV. Issues Bearing on the Pending Motion

### A. Introduction

Defendants Raytheon and MetLife make the following assertions in support of their motion to dismiss the complaint for failure to state a claim upon which relief could be granted:

> [Plaintiff's] claim for disability benefits is untimely. Alcorn was an employee of [Raytheon]. According to her complaint, she became disabled in September 1996 and began receiving disability benefits.... MetLife terminated her benefits in October 1996. The plan required Alcorn to bring suit within three years—that is, based on the allegations in this case, no later than May 2000. She did not file her complaint until March 2001. Because the three-year limitations period set forth in the plan is enforceable, and because Alcorn's complaint was not brought within that limitations period, her complaint must be dismissed for failing to state a claim upon which relief can be granted.

Memorandum in Support of Defendant's Motion to Dismiss (Docket No. 5) at 1.

In support of their argument, defendants point to the Raytheon Company Accident and Sickness Plan ("the Plan"), which governs plaintiff's benefits claim. *Id.* at 2. The Plan states:

> 10.10 *Limitation of Action.* In addition to the provisions of Section 10.9, no action at law or in equity shall be brought to recover under the Plan prior to the expiration of sixty (60) days after a claim has been filed in accordance with the requirements of the Plan, nor shall an action be brought at all unless within

three (3) years after expiration of the time permitted under the Plan for furnishing proof of disability to the Claims Administrator.

The Plan, Affidavit of Alfred C. Phillips (Docket No. 6), Ex. A, at 17.

The Plan requires that "no action at law or in equity shall be brought to recover under the Policy unless and until the claims review procedures in Article VIII of the Plan have been complied with and exhausted." *Id.* at 16. The Plan's review procedures detail an internal review process by the Claims Administrator. Section 8.6 of Article VIII states: "[a]fter exhaustion of the claims procedures provided under this Plan, nothing shall prevent any person from pursuing any other legal or equitable remedy otherwise available." *Id.* at 14.

Plaintiff makes three main assertions in opposing defendants' motion to dismiss:

1. The Defendants seek, via their disability plan, to curtail the Plaintiff's right to bring suit within 6 years, which is the Statute of Limitation in Massachusetts.

2. Both Defendants have conspired to defraud, and did in fact defraud the Plaintiff of her disability benefits by threatening to fire her unless she showed up for a bogus medical examination, which the defendants did not intend to conduct. In fact, the Plaintiff was told that she could not be examined allegedly because she was in severe pain. Thereafter, her disability benefits were denied on the flimsy allegation that she was seen walking back to the bus stop on her way home, albeit with a "gait," as described by the Defendant's investigator.

3. The Defendants come to court with unclean hands. They attempt to avail themselves of the defense that the Plaintiff did not file her suit timely, while on the other hand they have defrauded her and should be barred from asserting their defense.

Plaintiff, Mary Alcorn's, Opposition to Defendants' Motion to Dismiss (Docket No. 9) at 1.

## B. ERISA

"ERISA's coverage extends broadly to include all employee benefit plans." In re *New Valley Corporation,* 89 F.3d 143, 148 (3rd Cir.1996). Plaintiff seeks to recover benefits from October 30, 1996 to date under the Plan. ERISA has an enforcement provision, 29 U.S.C. § 1132, that spells out various remedies. Actions may be brought by beneficiaries to recover benefits under the terms of a plan, for violations of fiduciary duties, for an injunction, for "other appropriate equitable relief", or for violation of disclosure duties. 29 U.S.C. § 1132(a).

## C. Reasonableness of the Plan's Three-Year Limitations Period

■ ERISA does not itself identify a statutory period of limitation applicable to a claim for benefits. Ordinarily a claim for benefits under an ERISA plan is governed by the statute of limitation prescribed for contract actions in the state in which the claim is brought. *Salcedo v. John Hancock Mutual Life Insurance Co.,* 38 F.Supp.2d 37, 40 (D.Mass.1998) ("[I]t is appropriate to apply the most analogous state limitations period to actions filed under § 1132. Although the First Circuit has not addressed the question, this conclusion has been accepted nearly universally by courts that have."). *See also Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 873 (7th Cir.1997) ("The plaintiff points out correctly that ERISA does not contain a statute of limitations for suits to recover benefits and

that the practice of the federal courts when a federal statute contains no limitations period is to borrow the limitations period in the most nearly analogous state or federal statute of limitations."); *Laurenzano v. Blue Cross and Blue Shield of Massachusetts*, 134 F.Supp.2d 189, 205 (D.Mass.2001). Massachusetts has a six-year statute of limitation for actions in contract. Plaintiff argues that defendants, through the Plan, seek to "curtail the Plaintiff's right to bring suit within 6 years, which is the Statute of Limitation in Massachusetts." Docket No. 9 at 1.

■ As defendants correctly argue, however, the "contracting parties may agree upon a shorter limitations period as long as it is reasonable." *I.V. Services of America v. Inn Development & Management*, 7 F.Supp.2d 79, 86 (D.Mass.1998) (citing *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir.1991)), *aff'd*, 182 F.3d 51 (1st Cir.1999). In *Doe*, 112 F.3d at 874, the Seventh Circuit stated that "[t]he dominant view in contract law is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable." *Id.*

In determining what constitutes a reasonable period of time in which to require commencement of a legal action, courts have considered periods ranging from ninety days to thirty-nine months as reasonable. *See* the following decisions:

> *Doe*, 112 F.3d at 875 ("There is no doubt that the contractual limitation here—39 months from the date of the services for which benefits are sought—is reasonable in general and in this case. . . ."); *Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301, 1304 (11th Cir. 1998) ("In this case the [90–day] period is reasonable. We do not mean to suggest that a 90–day limitations period will always be reasonable, nor do we mean to

suggest that a shorter limitations period will ever be reasonable."); *I.V. Services of America v. Inn Development & Management*, 7 F.Supp.2d at 87 ("A claimant has three years within which to commence suit. Moreover, the limitations period is reasonable, courts having often concluded that a contract which provides three years for a claim of this type is sufficient.").

The court in *Doe*, 112 F.3d at 874, reasoned that the dominant view in contract law, that it is permissible to have a contractual limitation period shorter than the statute of limitation, "is right because it is consistent with the principle of party autonomy that underlies the law of contracts, and that it should be applicable to ERISA plans." The opinion continues: "[T]he requirement that the contractual limitation, to be enforceable, be reasonable backs up the market incentives to deal fairly with the plan's beneficiaries." *Id.* at 875. Of course, an ERISA decisionmaker is a private entity in contrast with a governmental administrative agency. A court, on judicial review in an ERISA case, is judging private decisionmaking, not agency decisionmaking. *See* Keeton, Judging in the American Legal System, § 14.4.2 (1999). Thus the law of judicial review of agency decisionmaking is not directly on point. It nevertheless provides useful guidance by analogy. In *Doe*, the Court of Appeals for the Seventh Circuit invoked this analogy and analyzed a suit brought under ERISA in federal court as analogous to the ordinary method of judicial review of agency decisionmaking in federal court:

> A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more than 30 or 60 days is allowed within which to file such a suit. . . . Like

a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. It is like an appeal, which in the federal courts must be filed within 10, 30, or 60 days of the judgment appealed from. . . .

*Doe*, 112 F.3d at 875.

The court in *Northlake*, 160 F.3d at 1303–04, agreed with the conclusion that a reasonable contractual limitation period on an ERISA action is enforceable, regardless of state law, but determined that the limitation period before it was reasonable by examining three case-specific factors: (1) no suggestion appeared in the record in that case that the plan's 90–day limitation period "was a subterfuge to prevent lawsuits," (2) "the 90–day limitations period is commensurate with other Plan provisions that are designed to process claims with dispatch," and (3) the suit followed the completion of "an ERISA-required internal appeals process." *Id.*

The contract at issue in the present case sets forth a three-year limitation period. The Seventh Circuit's reasoning in *Doe* for determining the reasonableness of a limitation period in a benefits plan is persuasive and applies in the circumstances of this case. Under that analysis, I determine that the Plan's three-year limitation period is reasonable and that it therefore governs plaintiff's claim for benefits. Plaintiff was required to file her action within three years "after expiration of the time permitted under the Plan for furnishing proof of disability to the Claims Administrator." Docket No. 6, Ex. A, at 17.

An important issue related to the three-year limitation period for bringing legal action under the Plan is determining the specific event that triggered the accrual of plaintiff's claim for benefits. Defendants contend that "[t]here are, at most, three events that triggered the accrual of Al-

corn's claim." Docket No. 5 at 4. They add, however: "Alcorn's claim was brought more than three years after all three events, so it is time-barred." *Id.* In support of their argument, defendants present three possible triggering events, nevertheless maintaining that "identifying the proper triggering event is unnecessary in this case." Docket No. 5 at 6. Defendants contend that "[w]hether Alcorn's claim accrued when she no longer could submit proof of disability to MetLife, when she first learned she had been harmed, or when her administrative remedies were exhausted, her complaint was filed more than three years later." *Id.*

Courts have held that different events can be considered "triggering events" for the purposes of determining when a limitation period began to run on a claim for benefits. The thirty-nine month limitation period in *Doe*, 112 F.3d at 872–73, included a three-year period of time to file suit following the time written proof of loss was required to be filed, for which a claimant had ninety days to file following the date of services for which benefits were sought. *Id.* The court in *Salcedo*, 38 F.Supp.2d at 43, considered whether the initial denial of benefits or the denial of an appeal was the more appropriate triggering event (or "accrual date") and concluded that "[s]everal cases have reasoned that, because ERISA has been interpreted to include an administrative exhaustion requirement, no cause of action can arise until a claimant has completed the appeals process." *Id.* That court determined that "accrual upon denial of a claimant's appeal furnishes the fairest result." *Id.* And finally, the court in *Northlake*, 160 F.3d at 1304, in upholding the limitation period in the plan at issue, considered that the 90–day limitation period did not begin to run until the completion of the internal appeals process. *Id.*

Defendants cite *Salcedo* in articulating the third, and latest, possible triggering event for plaintiff Alcorn's claim—MetLife's denial of her appeal. Docket No. 5 at 5. The defense argument must deal with another complexity, however, because nothing in the record now before me indicates whether or not plaintiff filed a timely appeal and whether or not that appeal was formally denied. Under the Plan, a claimant has 60 days from the time of termination of her claim to request a review. *Id.* at 5–6: If a claimant files a timely request, MetLife must issue a final decision within 120 days. *Id.* To satisfy this added complexity, defendants contend that if plaintiff failed to submit a request for review within 60 days, then her claim is barred. *Id.* at 6. They also contend that if MetLife failed to issue a final decision within 120 days, then plaintiff's appeal is treated as denied, triggering the limitations period in which plaintiff could file suit. *Id.* Counting three years and 180 days following the termination of plaintiff's benefits in October 1996, defendants conclude that the period in which plaintiff could file suit ended in May 2000. *Id.* Plaintiff did not file suit until March 15, 2001. Defendants correctly argue that the Court of Appeals for the First Circuit has ruled that "[g]ranting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Insurance Company*, 142 F.3d 507, 509 (1st Cir.1998). I conclude that this declaration by the Court of Appeals for the First Circuit applies to the case now before me. *See also Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001).

Section 10.9 of the Plan stipulates that "[n]o action at law or in equity shall be brought to recover under the Policy unless and until the claims review procedures in Article VIII of the Plan have been complied with and exhausted." Docket No. 6, Ex. A, at 16. Although the plaintiff alleges that she "made numerous demands upon the defendant Raytheon to pay her the monies owed her from October 30, 1996, to date, to no avail," she does not indicate whether she followed the internal appeals process in Article VIII of the Plan or what the outcomes of those processes were. Complaint at 2. Even taking into account the triggering event most favorable to the plaintiff, the denial of her hypothetical appeal, plaintiff still filed her suit too late.

## D. Equitable Estoppel Claim

■ Plaintiff asserts that the defendants "come to court with unclean hands," and that because they defrauded her they should be barred from asserting the defense that plaintiff did not timely file her suit in order to dismiss plaintiff's claim. Docket No. 9 at 1. Essentially, the plaintiff is making an equitable estoppel claim to invalidate the defense that plaintiff's suit is time-barred.

■ ERISA's enforcement provision, section 1132, includes a remedy for "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). I do not interpret section 1132 as precluding an estoppel claim. Like any other claim, however, to be an effective response to an otherwise valid motion to dismiss, a pleading of equitable estoppel must do more than make allegations of the kind that could be made by an advocate with no familiarity with facts on which the claimant might rely to support her claim. An assertion that conduct of the defendant that is consistent with the terms of the Plan regarding investigation and processing of claims was a subterfuge, fraudulently adopted to make the contractual three-year limitation period apply

rather than a six-year provision in a state statute, is not enough to defeat the contractual limitation defense.

On the record now before me, plaintiff has failed to allege factual circumstances that would support her allegation of the conclusion that a fraudulent subterfuge was employed by defendant. In these circumstances, I cannot conclude that her response is sufficient to defeat the motion to dismiss.

I conclude that defendants' actions of investigating and processing the plaintiff's claim did not prevent the plaintiff from filing her suit in a timely manner, and equitable estoppel does not salvage her claim.

### ORDER

(1) For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion to Dismiss (Docket No. 4) is ALLOWED.

(2) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

Judgment for defendants, with costs.

### Final Judgment

For the reasons stated in the Opinion and Order of this date, it is ORDERED:

Judgment for defendants, with costs.