Thomas SKIPPER, Plaintiff,

v.

CLAIMS SERVICES INTERNATIONAL, UNUM Life Insurance Company of America, Inc., and Humana Insurance Company, Defendants.

No. CIV.A. 01–30183–MAP.

United States District Court,
D. Massachusetts.

Aug. 1, 2002.

Mala M. Rafik, S. Stephen Rosenfeld, Rosenfeld & Associates, Boston, MA, for Plaintiff.

Katherine A. Robertson, Bulkley, Richardson & Gelinas, Springfield, MA, for Defendants.

*MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* (Docket No. 21)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff Thomas Skipper ("plaintiff") brings this action under the Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") against defendants Claims Services International, Inc., UNUM Life Insurance Company of America, and Humana Insurance Company ("defendants") for the wrongful denial of his long-term disability benefits. Defendants have moved for summary judgment on the ground that plaintiff's claim is barred by the policy's internal two-year limitations period. For the reasons set forth below, defendants' motion for summary judgment will be denied.

## II. *STANDARD OF REVIEW*

"Summary judgment is appropriate when the record reveals no genuine issue as to any material fact and when the moving party is entitled to summary judgment as a matter of law." *Dandurand v. Unum Life Ins. Co. of America,* 284 F.3d 331, 335 (1st Cir.2002). A "genuine" issue is one that reasonably could be resolved in favor of either party, and a "material" fact is one that affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The record evidence must be construed 'in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party.'" *Pure Distributors, Inc. v. Baker,* 285 F.3d 150, 154 (1st Cir.2002), *quoting Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir.2000).

## III. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff, a former employee of Network Solutions, Inc. ("NSI") was covered by NSI's group insurance policy, which provided long-term disability coverage. (Docket 23 at 1). The insurance policy contained provision 4F, which states that,

> No lawsuit may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such lawsuit may be brought after two years from the time written proof of loss is required to be given.

(Docket 27, Exhibit C at D01136). The term "proof of loss" is defined nowhere in the policy. In fact, the only other mention of "proof of loss" comes in Section 4(D) of the policy. It states:

a. Proof of any loss must be given to Lincoln National within 90 days after a loss begins.

b. If proof of any claim is not given within those 90 days, the claim will not be denied or reduced if that proof was given as soon as was reasonably possible.

c. "Proof" as required in this subsection means proof satisfactory to Lincoln National.

(Docket 27 at D01135).

On November 6, 1989, plaintiff had synthetic aortic valve replacement surgery.

Shortly thereafter, plaintiff applied for long-term disability benefits. On April 9, 1990, he was approved and informed that his benefits would commence May 19, 1990. (Docket 23 at 2).

Plaintiff received benefits until October 14, 1997. On that date, defendants notified plaintiff that his benefits were being discontinued as of October 20, 1997, because (in defendants' view) his condition no longer met the definition of total disability. The October 14, 1997 letter informed plaintiff that he could appeal the denial of benefits by sending a written request within sixty days of the receipt of the letter. Plaintiff did appeal within sixty days.

On October 4, 1998, in a letter that will be referred to as the "final denial letter," defendants informed plaintiff that his appeal had been reviewed and the decision to curtail benefits was affirmed. This letter provided that defendants "would be happy to review any pertinent additional information which would support Mr. Skipper's position that his medical condition prevents him from performing any occupation.... This information must be received no later than 75 days from the date of this letter." (Docket 24 at D0106). Plaintiff did not submit any additional information.

Instead, on December 24, 1998, plaintiff filed suit in state court in Hawaii, where he was a resident at the time. The case was removed to federal district court, but ultimately dismissed, without prejudice, pursuant to Fed.R.Civ.P. 4(m) for failure to effect timely service of process. Plaintiff did not attempt to re-file in Hawaii.

Thereafter, plaintiff moved to Massachusetts and obtained new counsel. With counsel's assistance, plaintiff filed the present suit on October 4, 2001, exactly three years after receiving the final denial letter. As noted, the present suit charges defendants with the unlawful denial of benefits pursuant to ERISA. Defendants have moved for summary judgment on all counts, contending that the suit is barred by the contractual limitations period.

## IV. DISCUSSION

■ Ordinarily, a statute of limitations of six years applies to claims for benefits under an ERISA plan in Massachusetts. *Alcorn v. Raytheon Company*, 175 F.Supp.2d 117, 120–121 (D.Mass.2001). ERISA itself does not contain·a statute of limitations for suits to recover benefits. In the absence of a federal standard, courts almost universally apply the corresponding state law statute of limitations. *Salcedo v. John Hancock Mut. Life Ins. Co.*, 38 F.Supp.2d 37, 40 (D.Mass.1998). Defendants do not dispute that in this case, but for the contractual provision, the Massachusetts six-year statute of limitations for actions in contract would apply. *Alcorn*, 175 F.Supp.2d at 120–121. Obviously, given the date of filing, this suit would not be time barred under the six-year state law rule.

■ Defendants' motion to dismiss is anchored on the *contractual* limitations period. It is well-established that "contracting parties may agree upon a shorter limitations period as long as it is reasonable." *I.V. Services of America, Inc. v. Inn Development & Management, Inc.*, 7 F.Supp.2d 79, 86 (D.Mass.1998), *aff'd*, 182 F.3d 51 (1st Cir.1999). Here, defendants assert that the contractual limitations period in Section 4F renders plaintiff's complaint untimely as a matter of law. As noted, Section 4F provides,

> No lawsuit may be brought to recover on this policy ... after two years from the time written proof of loss is required to be given.

(Docket 27, Exhibit C at DO1136).

The fatal defect in defendants' argument is that no reasonable person in plaintiff's

circumstances could determine what was intended by the phrase "two years from the time written proof of loss is required to be given." To an ERISA beneficiary who has submitted his "proof of loss," has had his application for benefits approved, and has then been receiving benefits for a period of many years before being cut-off, this language is pure gobbledegook. Here, Skipper submitted his "proof of loss" in 1989 when he initially applied for and began receiving benefits; he was not cut off until 1997. No further "proof of loss" was required or even requested after 1989. Read literally, the policy language would therefore have the absurd result of terminating plaintiff's right to bring suit in 1991, when he was still receiving benefits.

The plain fact is that the contractual limitation language leaves a person like Skipper whose benefits have been cut off completely in the dark as to how to calculate the triggering date for the limitations period. A limitations period without an unambiguous trigger cannot limit anything.

The precise issue raised here was recently addressed in *Mogck v. Unum Life Ins. Co. of America*, 292 F.3d 1025 (9th Cir.2002). In that case, the policy provided that a claimant "cannot start any legal action ... more than 3 years after the time proof of claim is required." The *Mogck* plaintiff began receiving disability benefits in June, 1993. *Id.* at 1027. Subsequently, through a series of letters in 1995, the *Mogck* insurer informed the plaintiff that his benefits would not be extended, and invited plaintiff to submit "additional information to support [plaintiff's] request for disability benefits," or to take an internal appeal of the decision to deny him benefits. As the court noted, however, "nowhere in either letter [were] the terms 'proof,' 'request for the proof,' or 'proof of claim' utilized." *Id.* at 1028. The insurer upheld its denial of benefits in September, 1995. The *Mogck* plaintiff did not file suit until February 5, 1999, approximately three and one-half years later. The insurer-defendant moved for summary judgment on the ground that the contractual limitations period had expired.

The Court of Appeals held that "[w]hen an insurer drafts particular policy terms and procedures related to the insured's right to commence a legal action, the insurer must utilize those basic terms and procedures in order for the policy to be triggered." *Id.* at 1029. The *Mogck* court noted that the policy at issue was drafted entirely by the insurer. *Id.* Therefore, "because [the insurer] drafted certain terms regarding time limits on legal actions, but did not utilize those terms at all in its correspondence with [the plaintiff], the policy's time limitation provision was never rendered operative." *Id.* In the absence of an operative contractual limitations period, the state statute of limitations applied, and the plaintiff's suit was timely. *Id.*

This case is no different. It is well-established in the First Circuit that "in keeping with the rule of *contra proferentem*, ambiguous terms should be strictly construed against the insurer" in the interpretation of ERISA-regulated insurance plans, such as the policy here. *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir.1994). *See also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100–1101 (10th Cir. 1999) (describing application of *contra proferentem* rule in ERISA context).

In this case, the ambiguous provision refers to "the time written proof of loss is required to be given," as the triggering date for the contractual limitations period. But no matter how scrupulously Skipper may have pored over the contract language, nothing would have told him when that date fell, for him. Nothing, moreover, contained in the correspondence he re-

ceived from the defendants as they were terminating his benefits would have given him the slightest idea as to when the contractual limitations period would begin to run.

It is true, as defendants point out, that courts have found the terms "proof of claim" and "proof of loss" to be unambiguous. *I.V. Services,* 7 F.Supp.2d at 80; *Patterson–Priori v. Unum Life Ins. Co.,* 846 F.Supp. 1102, 1105 (E.D.N.Y.1994). These cases do not assist defendants. In *I.V. Services,* the issue of the ambiguity of the requirement that legal action be taken within three years "after the date proof of loss must be submitted" was simply not raised or addressed. The discussion makes it clear that the court assumed, and the parties did not dispute, that the three-year limitation period would begin to run on the date of *final denial* of benefits. 7 F.Supp.2d at 87. *Patterson–Priori* also contains no discussion of the ambiguity created by anchoring the limitations on the date upon which "proof of claim is required." 846 F.Supp. at 1103. For policy reasons the district court concluded that the defendant there had "the right to expect that it [would] be sued within three years after a plaintiff learns that benefits will not be forthcoming." *Id.,* at 1105. There was no discussion of the ambiguity of the *contract* language.

In this case, the rank obscurity of the policy language is glaring. Section 4D provides that "proof of loss must be given to Lincoln National within 90 days *after a loss begins.*" (Docket 27, Exhibit C at D01135)(emphasis added). This phrasing clearly conveys that "proof of loss" must be submitted within three months "after a loss begins." Indeed, no other language in the policy remotely suggests that "proof of loss" will be "required to be given" at any time other than "after a loss begins."

It is undisputed that Skipper's loss "began" around the time of his surgery in November, 1989, and that Lincoln National accepted plaintiff's proof of loss in April, 1990 without significant dispute. Had the defendants denied disability benefits from the outset, "after [plaintiff's] loss beg[an]," the policy might be construed to require plaintiff to initiate suit within two years of his original submission of the required "proof of loss." Even then, some ambiguity would have made calculation of the timing difficult, but at least it would not have been flatly impossible.

As noted, there is *no* indication anywhere in the policy of how the contractual limitations period might apply to disputes arising from claims for the cut-off of continuing benefits—such as the claim in this case that arose nearly eight years after the "loss began."

Defendants' correspondence with plaintiff in 1997 and 1998 might easily have clarified the limitations issue, but it did not. Like the correspondence in *Mogck,* defendants' letters did not contain the words "proof," "proof of loss," or "proof of claim." It would be ridiculous, and grossly unfair, to suggest that defendants' mere expression of a willingness "to review pertinent additional information," in their October 4, 1998 letter, should be construed as a request for "proof of loss" or as notice of the commencement of the two-year limitation period. Had the defendants intended to terminate plaintiff's right to bring suit at some time in the future, it would have been simplicity itself for them to tell him so, but they did not. They offered not a hint on this crucial point. Plaintiffs only guidance (if it could be so called) as to any filing deadline, was the utterly unhelpful policy language.

Defendants main response to the problem of contract ambiguity is the argument that, if the triggering date for the contractual limitations period is impossible to fix with precision due to the opacity of the

language used, then the date (whenever it was) *must* necessarily have fallen at the latest by October 4, 1998, when Skipper received what this memorandum has termed his "final denial letter." This riposte suffers three defects, at least.

First, the argument ignores the fact that the court's task here is to focus on the actual *contract* language, keeping in mind that the defendants drafted it. In ERISA cases defendants themselves are usually the first to insist on the application of contract provisions *strictissimi juris*, no matter what hardships befall beneficiaries and their families. If the policy language establishing the limitations period in this case makes no sense, it is not up to the court to hypothecate some other limitation mechanism that seems plausible. The fallback to the contractual limitations period is the statutory limitations period, not some period dreamed up by the court.

Second, if the defendants had *really* intended that the three-year limitation period would begin running from the time of the "final denial," then it would have been the easiest thing in the world for them to have said so, either in the policy itself or in their correspondence. They never did. Instead, they presented beneficiaries with the inscrutable reference to "the time written proof of loss is required to be given." No construction of that language could possibly have led Skipper to conclude, in these circumstances, that the date intended by that language was October 4, 1998. It was therefore perfectly reasonable for him to rely on the six-year statutory limitation period.

Third, the argument that the limitations period *must* have begun running by October 4, 1998 misconstrues the issue. If the point in dispute were the date upon which plaintiff's cause of action "accrued," then October 4, 1998 would be a likely date. If plaintiff had, for example, waited more than six years from that date to file this law suit, a strong argument could be made that the filing was out of time. But the proper accrual date for this litigation is not the subject of inquiry here. The issue on the table is the proper construction of the contract language, and specifically whether it sets forth with reasonable clarity a limitation period that extends for a time, or begins at a point, different from the statutory provision. For the reasons stated, the policy fails to do this. Put differently, the issue is not when the cause of action might be found to have accrued under generally applicable authorities and principles; it is what, if anything, the contract says that might cut off this plaintiff's right to sue. Given that the policy language offers nothing intelligible that is applicable to Skipper's situation, defendants cannot rely on it as a basis for dismissal.

Since the motion for summary judgment must be denied for these reasons, the court need not address plaintiffs' alternate argument that filing suit in Hawaii within the two-year limitations period also renders his suit timely.

## V.  CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Docket No. 21) is hereby DENIED.

A separate Order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum, defendants' motion for summary judgment (Docket No. 21) is hereby DENIED. The clerk will set a date for a status conference to set a schedule for future proceedings.

It is So Ordered.