In the

# United States Court of Appeals

## For the Seventh Circuit

———————————————

No. 22-2925

JOHN DOE,

*Plaintiff-Appellant,*

*v.*

LOYOLA UNIVERSITY CHICAGO,

*Defendant-Appellee.*

———————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-7335 — **Steven C. Seeger**, *Judge.*

———————————————

ARGUED APRIL 20, 2023 — DECIDED MAY 3, 2024

———————————————

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Loyola University Chicago expelled John Doe after concluding that he had engaged in sexual activity with Jane Roe, a fellow student, without her properly obtained consent. Contending that the University discriminates against men, Doe sued under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–88, plus Illinois contract law. The district court granted summary

judgment to Loyola. 2022 U.S. Dist. LEXIS 175968 (N.D. Ill. Sept. 28, 2022).

The parties' appellate briefs did not explain Doe's use of a pseudonym, so we directed them to file post-argument memoranda on that subject. The memoranda mention facts that lead us to ask whether the case is moot. We now remand to the district court to address both mootness and anonymity.

The memoranda told us that Doe was admitted to another university in 2017, soon after his expulsion from Loyola, and graduated with honors in 2018. The normal remedy in cases of this kind—an injunction directing the college to readmit the expelled student—is therefore unavailable. (Doe does not contend that he wants to attend Loyola for post-graduate education.) As for damages: *Barnes v. Gorman*, 536 U.S. 181 (2002), holds that punitive damages are unavailable in private litigation under laws based on the Spending Clause. Title IX is such a law; it applies only to institutions that accept federal funds. 20 U.S.C. §1681(a). *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), adds that damages for emotional distress also are unavailable under Spending-Clause statutes.

That leaves standard compensatory damages. See *Hayden v. Greensburg Community School Corp.*, 743 F.3d 569, 583 (7th Cir. 2014). But what could they be in a case such as this? Doe's brief does not explain what remedy he seeks, and the district judge did not mention this subject. Compensatory damages may depend on the resolution of factual disputes about what happened to Doe following his expulsion, disputes best resolved by a district judge. We do not say that Doe must *win* on damages to have a live claim, see *Bell v. Hood*, 327 U.S. 678 (1946), but, unless compensatory damages are an option, this suit is not justiciable. That makes a remand necessary.

Anonymity is the other issue requiring attention on re-mand. District Judge Feinerman, who handled this case until his resignation, authorized Doe to proceed under a pseudo-nym. He gave a brief oral explanation:

> Other courts in similar cases involving these kinds of hearings at colleges have allowed the plaintiffs to proceed as Does, and I don't see any reason to chart a different path in this case.

> It would defeat the purpose of the suit if the plaintiff were named because this is all about the plaintiff preserving his reputation and his future employment prospects. And if the plaintiff were named, it would be pretty easy to put two and two together and figure out who the person whom Loyola deemed to be the victim was.

This comes to three reasons: (1) anonymity is the norm in Title IX litigation; (2) plaintiff wants to keep out of public view Loy-ola's finding that he committed misconduct; and (3) the victim is entitled to anonymity. We address them in turn.

First, although anonymity may be common in Title IX suits, it must be justified in each case. "Title IX [does not create an] easement across the norm of using litigants' names." *Doe v. Indiana University*, No. 22-1576 (7th Cir. Apr. 26, 2024), slip op. 9. Complaints normally must name all parties. Fed. R. Civ. P. 10(a). Exceptions such as the use of initials for minors, Fed. R. Civ. P. 5.2(a)(3), may apply to some first-year college stu-dents, but Doe was an adult when he filed this suit. "[J]udicial proceedings, civil as well as criminal, are to be conducted in public." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). "Identifying the parties to the proceeding is an important dimension of publicness. The peo-ple have a right to know who is using their courts." *Ibid*. "Se-crecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why

the case was brought (and fought), and what exactly was at stake in it." *Mueller v. Raemisch*, 740 F.3d 1128, 1135–36 (7th Cir. 2014). See also, e.g., *E.A. v. Gardner*, 929 F.3d 922, 926 (7th Cir. 2019) (only "exceptional circumstances" justify the use of a fictitious name for an adult).

Educational institutions that receive federal funds must not disclose students' records except under specified circumstances. 20 U.S.C. §1232g(b). But this statute does not apply to plaintiff, who is not an educational institution and may disclose his own records. See *Indiana University*, slip op. 9–10. More: a federal regulation, 34 C.F.R. §99.31(a)(9)(iii)(B), authorizes educational institutions to disclose student records in the course of litigation once a student sues the educational institution.

Second, although plaintiff understandably prefers to keep the public from learning that Loyola has found that he committed misconduct, we have held that a desire to keep embarrassing information secret does not justify anonymity. See *Indiana University*, slip op. 6–8 (citing cases and giving examples). See also, e.g., *Mitze v. Saul*, 968 F.3d 689, 692 (7th Cir. 2020); *Doe v. Deerfield*, 819 F.3d 372, 375, 377 (7th Cir. 2016); *Coe v. Cook County*, 162 F.3d 491, 498 (7th Cir. 1998).

Doe's supplemental memorandum contends that disclosure may lead to "retaliation" against him, but all he seems to mean by this is that many people prefer to avoid dealing with wrongdoers. We observed in *Indiana University* that the sort of retaliation that might warrant secrecy is a kind that is unjustified by the facts—such as animus toward people with unpopular religious beliefs. See slip op. 6–9 (discussing *Doe 3 v. Elmbrook School District*, 658 F.3d 710, 721–24 (7th Cir. 2011), adopted on this issue by *Doe v. Elmbrook School District*, 687

F.3d 840, 842–43 (7th Cir. 2012) (en banc), and similar decisions).

Although we recognize that no one wants a college's finding of misconduct broadcast in the pages of the Federal Reporter, a desire to keep bad news confidential, if adequate to justify secrecy, would lead to a norm of anonymity across swaths of civil and criminal litigation. Take a worker who files an age-discrimination suit, only to be met by the response that he had been fired as incompetent. Or consider a criminal defendant charged with crossing state lines to have a sexual encounter with a teenager. If those charges and defenses are made in public, why should college students enjoy a privilege to keep misdeeds secret?

Third, we come to the district judge's concern that identifying Doe would enable some people to infer Roe's identity. Loyola's supplemental memo contends that it is "unlikely that there are observers of this case who know enough about [Doe's] past romantic relationships and disciplinary history to discover the identity of the nonparties involved simply from having [Doe's] name made public." There is another possibility: that everyone who could put two and two together already has done so. See *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). The people who might be able to identify Roe after learning Doe's identity are those who knew they had been dating before Doe's expulsion. These people also likely learned about the expulsion. If they did not put two and two together then, why would they do so now? Still, maybe there is a reason why the litigation could provide that information, even when the expulsion did not. An evidentiary hearing could explore the subject, perhaps with input from Roe about

the possible effect of disclosing Doe's identity; a court of appeals is not the right forum for factual findings.

Then there is the question whether Roe has a legal entitlement to concealment. Courts often extend the protection of anonymity to victims of sex crimes, *Blue Cross*, 112 F.3d at 872, and perhaps that is the best analogy for Roe. See also Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1430–37 (2022) (collecting decisions pro and con on whether status as a victim supports anonymity). There is also a question whether 20 U.S.C. §1232g(b) offers some protection to Roe. This issue was flagged but not resolved in *Indiana University*, slip op. 10. We do not resolve it here either. We lack the benefit of an adversarial exchange in either the briefs or the post-argument memos and think it best to postpone decision until the issue has been joined. Cf. *United States v. Sineneng-Smith*, 590 U.S. 371 (2020).

*Indiana University* remanded to the district court so that the plaintiff could decide whether to dismiss the suit rather than reveal his name. That course is appropriate here as well. If Doe wants to continue the suit—and if it is not moot—then the district judge must decide whether Roe is entitled to anonymity and, if she is, whether putting Doe's name in the public record would be equivalent to revealing Roe's identity as well. If after the proceedings on remand a live controversy remains, any appeal will return to this panel, with new briefs limited to newly arising issues.

Remanded for proceedings consistent with this opinion.