In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1046

DAVID W. WATTS,

*Plaintiff-Appellee,*

*v.*

KEVIN JONES and MARK SMIT,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 23-cv-87-wmc — **William M. Conley**, *Judge.*

ARGUED SEPTEMBER 25, 2025 — DECIDED MAY 29, 2026

Before BRENNAN, *Chief Judge*, and EASTERBROOK and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Two detectives investigating an inmate at the Wisconsin Secure Program Facility tried to speak with David Watts, another inmate, who had sent letters suggesting that he had valuable information about a murder and an attempted murder. One detective appeared at Watts's cell. He feared that the inmate under investigation would get wind of anything he said, so he refused to talk. Watts relates that, even so, he was threatened and harassed. Though no

physical harm came to him, Watts filed this suit under 42 U.S.C. §1983 seeking damages from the detectives for exposing him to risk.

Watts asked the district court to conduct the litigation under seal, and it largely obliged. Many papers were withheld from the public record, and others were heavily redacted. After the district court denied the defendants' motion for summary judgment, they took an immediate appeal to argue for qualified immunity. Watts asked us to conduct the appeal under seal. A motions judge of this court declined but authorized redactions so severe that the case was docketed—and the briefs were captioned—as "Appellee v. K.J. and M.S."

The use of pseudonyms was explored at oral argument, during which the defendants consented to the disclosure of their names. Watts continued to assert a right to anonymity, but this court found secrecy unjustified and entered an order (reproduced as an appendix to this opinion) giving him a choice between withdrawing the suit and having his name placed in the public record. After that time passed without action on his part, the court revised the docket to use the parties' real names.

The facts that matter are few: defendants allowed other inmates to learn (or suspect) that Watts furnished information valuable to an ongoing investigation. They asked Watts to meet them in an interview room, but he refused. That led one detective to appear at Watts's cell and ask about a letter (but without referring to the letter's contents). Watts refused to talk with the detective. He submits, however, that just by coming to the cell and mentioning a letter, the detective put him in danger—and Watts contends that the detective wanted the other inmate to learn that he was willing to talk.

Watts suggests that we lack appellate jurisdiction, but an interlocutory appeal is proper when the public officials confine attention to the question whether the claim rests on clearly established law. *Green v. Newport*, 868 F.3d 629, 632 (7th Cir. 2017). The detectives have accepted all of the district judge's conclusions about what facts a jury could find, and having done this they are entitled to present arguments about the state of the law.

We know from *Farmer v. Brennan*, 511 U.S. 825 (1994), that prison guards may not inflict punishment by allowing inmates to harm each other. We may assume that the same rule applies to detectives visiting a prison and that these detectives were deliberately indifferent to the risk that appearing at Watts's cell door would lead other prisoners to harm Watts. But physical harm did not occur; he was hassled but not attacked. The question for qualified immunity: is it clearly established that public employees can be liable in damages when their choices do not lead to a prisoner's bodily injury?

Recognizing that Watts has not been injured physically, the district judge concluded that his recovery is limited to $1 in nominal damages, plus any punitive damages that a jury may see fit to award. Presumably the $1 would be a response to emotional injury, and it would encounter problems under 42 U.S.C. §1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" All of Watts's claims in this suit are difficult to square with §1997e(e).

But the deeper problem is that there cannot be *any* recovery under §1983, nominal or punitive, unless it was clearly established at the time of the events that the defendants violated

the plaintiff's rights. See, e.g., *Zorn v. Linton*, 146 S. Ct. 926 (2026) (summarizing the law of qualified immunity). And neither the district court nor counsel for Watts has pointed to a decision clearly establishing that exposing a prisoner to a risk of physical harm that never comes to pass violates the Constitution.

Quite the contrary, the norm in many parts of tort law is that risk alone is inadequate. See, e.g., *Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424 (1997) (no liability for fear of disease, caused by exposure to a carcinogen, if disease does not develop). When concluding that Watts has clearly established law on his side, the district judge pointed to decisions such as *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), which held it clearly established that the release by police of tape recordings showing that Thomas Monfils had identified a co-worker as a thief violated the Constitution, when the police expressly promised Monfils to maintain confidentiality. The judge cited many other decisions observing that allowing a prisoner to be identified as a snitch puts that person in danger.

Thomas Monfils was not a prisoner, and *Monfils* goes about as far as an appellate court can in departing from the norm, see *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), that public officials do not owe free citizens a duty to protect them from harm. But Watts does not get mileage from *Monfils*, and not just because the defendants never promised Watts to maintain confidentiality. Thomas Monfils paid with his life for the police department's error. He was "discovered at the bottom of [a] vat. The body was mutilated—the vat had propellers that stirred the thick pump mixture. A rope, with a 50-pound weight, was tied to Monfils' neck." 165 F.3d at 513. The suit was filed by Susan Monfils, administrator of his estate. *Monfils* does not establish a rule that a person *not* harmed physically following

disclosure of information known to the police has a clearly established right to recover under §1983.

At oral argument, counsel for Watts invoked *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), for the proposition that an unharmed inmate has a constitutional claim against guards who fail to protect him from other inmates, even when the feared harm does not occur. But *Babcock* actually establishes the opposite rule, holding (*id*. at 270–73) that the inmate cannot obtain damages for risk of harm. The court remanded for consideration of potential relief under the First Amendment, but Watts does not rely on that constitutional provision.

We recognize that "the wanton infliction of psychological pain" (*Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)) can violate the Constitution, but statements of this kind do not clearly establish the proposition that exposing one prisoner to risk from other prisoners, in the course of trying to solve a murder, is a constitutional wrong. The Constitution does not ensure that all crimes can be solved painlessly. Asking questions of an inmate (or trying to do so) cannot sensibly be called the "wanton infliction of psychological pain".

Police and prosecutors enjoy a privilege to conceal the names of informants, even during criminal prosecutions, to reduce the risk of harm that informants face from their comrades in crime. When informants' identities become public, police or prosecutors may offer the services of witness protection programs that give the informants new identities in new cities. But the informant's privilege belongs to the prosecutor rather than the informant; a prosecutor may elect to put an informant on the stand (or disclose his name) if the prosecutor believes that the risk to the informant is outweighed by the need to secure a verdict. Similarly, a judge may order the informant's identity disclosed when necessary to protect the

defendant's right to a fair trial. Compare *Roviaro v. United States*, 353 U.S. 53 (1957), with *McCray v. Illinois*, 386 U.S. 300 (1967). Just as a witness lacks a constitutional right to confidentiality, so an informant lacks a constitutional right to be in a witness protection program. Valuable as it is to protect informants, so that more crimes can be solved (and more potential victims protected through deterrence), the tradeoff between investigation and safety has been left to law enforcement agencies and the political process. It is not something encoded into the Constitution in 1789 or 1868.

Watts has not identified a violation of a clearly established right, so defendants are entitled to summary judgment.

REVERSED

**Appendix**

Plaintiff seeks to hold two detectives liable under 42 U.S.C. §1983 for making statements, when visiting his cell, that may have allowed other inmates to infer that he has supplied valuable information to law-enforcement personnel. The district court denied defendants' motion for summary judgment, and they have appealed.

The district court entered an order sealing the litigation in large measure, which effectively created anonymity for the litigants and any potential witnesses. A motion to continue the sealing during the appeal led to a one-judge order denying that request but requiring anonymity all around. The result is that the parties have filed public briefs but not identified the persons involved. After hearing oral argument, this court now concludes that anonymity is inappropriate given this court's strong presumption that adult litigants must use their own names. See, e.g., *Doe v. Loyola University Chicago*, 100 F.4th 910 (7th Cir. 2024); *Doe v. Indiana University*, 101 F.4th 485, 491–93 (7th Cir. 2024); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997).

As far as we can see, anonymity for the defendants is utterly inappropriate. Police officers, prison guards, and many other public officials are regularly sued in their own names on account of acts said to be unlawful or even unconstitutional. At oral argument counsel for the defendants consented to the use of their names. Counsel suggested that the district judge may have believed that identifying the defendants would have identified the plaintiff too, but any such belief is unsupported. The defendants are police officers who have dealt with hundreds if not thousands of prisoners over the years. Publication of defendants' identities would not point to any one prisoner.

Plaintiff sought to remain anonymous out of a professed fear that he would be harmed by other inmates. Once again, however, claims based on potential harm are regularly litigated in the parties' real names. See, e.g., *Farmer v. Brennan*, 511 U.S. 825 (1994); *Grieveson v. Anderson*, 538 F.3d 763, 775–76 (7th Cir. 2008). Indeed, the table of contents in plaintiff's brief, which runs to three pages, includes many decisions addressing the potential for retaliation against cooperating witnesses, and not even one of those decisions uses pseudonyms.

Although plaintiff contends that he is in fear, he does not contend that he has actually been harmed by any other inmate—and this even though the genesis of his suit is the assertion that, several years ago, defendants allowed other inmates to learn his status as a cooperator. When plaintiff commenced litigation based on this unrealized fear, he surrendered his entitlement to anonymity. (Contrast persons protected by the informants' privilege, whose names are protected in criminal trials largely because they did not bring publicity on themselves by initiating litigation.) Plaintiff cannot achieve anonymity by himself making allegations that expose him to risk.

In other cases in which we have held that a district judge erroneously allowed anonymous litigation, we have permitted the plaintiff to withdraw the suit in order to preserve confidentiality. See, e.g., *Doe v. Indiana University*, 101 F.4th at 493; *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). The same approach is appropriate here. We therefore put this appeal on hold for 14 days. If within that time plaintiff dismisses his complaint with prejudice, the case will end (and this appeal with it). If plaintiff does not dismiss his complaint, we will put all litigants' names on the public record and proceed to a decision on the merits.